The opinion of the Court was delivered to the following effect by
Parker, J.
(After stating the action and the evidence at the trial.) A new trial is moved for, because the witness was incompetent; and also because no evidence ought to have been admitted to change the nature and effect of the contracts as they appear on the face of them, they being perfectly intelligible and unambiguous, without extrinsic evidence to alter their tendency and operation.
We have no doubt of the competency of the witness, he being discharged from any liability upon the notes, and not being called to prove that they were void on account of any illegal transactions between the parties to them.
Neither is there any doubt that the letters signed by the defendant, and the policies of insurance made for his benefit, were properly admitted in evidence to show the authority of the witness to procure insurance for him; and it might have been legally inferred, from this evidence, that the witness had sufficient authority to make the premium notes for the defendant, had he undertaken to charge him in the form of contract which he adopted. It is well settled that written or paroi authority is sufficient to authorize an act of this sort, without a formal letter of attorney under seal. But this written evidence proved nothing more than that the witness had * authority to bind the defendant in [ * 29 ] this contract. Whether he had executed this authority or not, depended upon other facts, which were proved by the oral testimony of the witness ; and the question now is, whether the oral testimony given at the trial, tending to prove the intention of both parties to the contract, was properly received to control and alter the tenor and effect of the notes, so as to make them the notes of the defendant, instead of being the notes of the witness, as they purport to be upon the face of them.
It might be sufficient for the decision of this cause to state that no person, in making a contract, is considered to be the agent of another, unless he stipulates for his principal by name, stating his agency in the instrument which he signs. This principle has been long settled, and has been frequently recognized ; nor do I know an instance in the books of an attempt to charge a person as the maker of any written contract appearing to be signed by another, unless the signer professed to act by procuration or authority, and *34 stated the name of the principal on whose behalf he gave his signature. It is also held, that, whatever authority the signer may have to bind another, if he does not sign as agent or attorney, he binds himself, and no other person.
This, as I have observed, is decisive against the plaintiff in the present action ; but as the general ground of the inadmissibility of paroi evidence in this case has been argued, and as there seems to be some uncertainty in the decisions upon this subject, it may be useful to consider the cause in this view of it, and to reconcile the several cases wherein this question has been agitated.
It is somewhat remarkable that so considerable a degree of obscurity should remain, at this day, upon a branch of the law of evidence so constant in its recurrence in courts of law. The fundamental principle, that deeds and specialties cannot be explained, or varied in their signification, by paroi evidence, if the terms made use of in the instrument are capable of sensible explanation of themselves, seems never to have been questioned. The [ * 30 ] application of the rule to * particular instruments, upon the question whether there was. any latent ambiguity, has been the only source of discussion; it being always admitted that an ambiguity appearing upon the face of the instrument, which has received the appellation of patent ambiguity, must be explained by the instrument itself, taking into view all its parts; and if it is not capable of such explanation, that it is void for uncertainty; and that a concealed or latent ambiguity, made to appear by some fact referred to in the instrument, may be explained by paroi testimony, the evidence then being of the same nature with that which made the ambiguity appear.
But it has sometimes been suggested that the rule does not apply to written simple contracts ; because, it is said, there being but two descriptions of contracts, those by specialty and those by parole, and specialties being only those contracts which are under seal, all written simple contracts are paroi contracts, and that therefore paroi evidence may in all instances be applied to them.
But it is manifest, from a recurrence to the authorities, that there are three, instead of two only, classes of contracts, vis., specialties, or those by deed, written contracts not under seal, and paroi or verbal contracts, where there is neither seal nor writing; and it is equally manifest that the rule of excluding oral testimony has been applied generally, if not universally, to simple contracts in writing, to the same extent, and with the same exceptions, as to specialties or contracts under seal, (a)
*35 The reason of the rule applies to one of this species of contracts as well as the other. It is that, when parties have deliberately put their engagements in writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it shall be presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing; so that oral testimony of a previous colloquium between the parties, or of conversation or declarations at the time when it was completed or afterwards, would tend, in many instances, to * substitute a new and different con- [ * 31 ] tract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties.
The rule was introduced in early times, when the most frequent mode of ascertaining a party to a contract was by his seal to the instrument; and it has been continued in force since the vast multiplication of written contracts, in consequence of the increased business and commerce of the world.
It is not because a seal is put to the contract, that it shall not be explained away, varied, or rendered ineffectual; but because the contract itself is plainly and intelligibly stated in the language of the parties, and is the best possible evidence of the intent and meaning of those who are bound by the contract, and of those who are to receive the benefit of it.
Another suggestion has been, that the practice of excluding oral testimony from the construction of written contracts has arisen from the operation of the statute of frauds and perjuries, which requires certain descriptions of contracts to be in writing; and that to admit oral testimony to affect such contracts would be to evade the statute. Hence it has been said that the rule has been applied only to written contracts which come within the spirit of that statute, and which could not be in force unless put in writing, (a)
But we are satisfied that this restricted application of the rule has not prevailed; and that, generally, oral testimony is not to be *36 received to contradict, vary, or materially affect, by way of expía nation, any written contract, whether within the statute of frauds or not, provided the contract is perfect in itself, and is capable oí a clear and intelligible exposition from the terms of which it is composed. The cases of Preston vs. Lerceau (1) and Coker vs. Guy (2) prove this to be the law in England.
But there are certain exceptions recognized in the English courts to this general rule, which, from being misunderstood and some times misapplied, have probably caused the doubts which [ * 32 ] now exist on the subject. Thus it is common, * in actions upon promissory notes, in which value is acknowledged to have been received, to permit the promisor' to show, where the action is between him and the original promisee, that no consideration, in fact, existed to support the promise. This seems, prima facie, to be repugnant to the general rule respecting written contracts ; but upon examination of the cases in which this evidence has been admitted, we think it will be found that they all rest upon fraud practised upon the party to be charged, or upon a failure of the consideration which produced the promise, or upon some illegality in the transaction; all of which may be proved as independent facts, tending to avoid the effect of a contract, but in no degree tending to explain or vary the terms or construction of it. (b) So, in mercantile contracts, such as negotiable promissory notes or bills of exchange, with blank endorsements, which is the usual mode of transfer, the party charged is permitted to show, as between himself and the person with whom he directly contracted, such facts .as tend to prove that a restricted operation was intended to be given to the signature, or that the transfer was "upon trust, and not absolute ; for in these cases the written engagement is left incomplete by the parties, and is capable of receiving a signification different from that which usually attends the naked signature of a party on the back of a contract or on a blank paper.
The case of receipts also is exempt from the application of the rule ; for a receipt is not evidence of a contract, but of payment; and it has always been permitted to show that something short of the actual terms of the receipt was intended; it being conclusive only as to the amount of money paid, and not even for that, provided any mistake can be shown to have taken place in the adjustment between the parties, (a)
*37 In the case of Hunt vs. Adams, (1) evidence was offered to show that, at the time the note was signed by Adams as surety, it was agreed, between him and the plaintiff’s intestate, that he should not be called upon until an attempt had * first [ * 33 ] been made to obtain payment of Chaplin, the principal in tho note. This evidence was considered by the whole Court as rightfully rejected by the judge who tried the cause; and it was then ruled that paroi testimony can in no case be admitted to alter the legal effect of a written simple contract. We are all of opinion that this decision, in which the late chief justice participated, was correct; and that a simple contract in writing, perfect in itself, and containing no ambiguity on the face of it incapable of explanation, cannot be enlarged or diminished by oral testimony. It may be contradicted in the sense in which that term is used in the case of Barker vs. Prentiss. (2) But the parties must abide by what is written, if the sense and meaning of it can be understood by the Court, from the terms of which they have made use.
The case now before us is a strong instance of the impropriety of admitting paroi testimony. The notes offered in evidence are the notes of the witness: they have no ambiguity upon the face of them ; and no doubt can be entertained of their purport and effect, without looking out of the notes for extraneous facts and circum stances, which do not apparently belong to them. The testimony of the witness would make it the contract of another, instead of his own ; and the other circumstances proved furnished strong corroboration of his testimony, and y,et are not inconsistent with the nature of the transaction, as it would appear from the contract itself. Although it is probably true that the premium for which these notes were given was due upon a policy made for the benefit of the defendant, and that the witness really and bona fide acted as his agent in procuring the policy, yet it is quite probable that the notes were given in their present form with a view to bind the witness, he being a merchant in credit, living in town, to whom the plaintiff could easily resort, and the defendant living at a distance, and his credit probably not known to the plaintiff.
It is not unusual for underwriters, when making insurance for persons abroad, to require the absolute engagement of * factors of brokers here, of whose ability they are satisfied. [ * 34 ]
It is true the witness testified that it was the intention *38 to bind the defendant, and not himself. But circumstances have changed: much time has elapsed, the witness has failed and his recollection may not be correct. These are the very reasons why such testimony should not be admitted, where, without it, there is no question or doubt. Had the parties to these notes intended what it is now suggested that they did, it is difficult to imagine why (one of them being an insurance broker, and by profession a lawyer, and the other a commission merchant, accustomed to transact business for others) the capacity in which he acted was not expressed on the note. It is so common a thing for a man, in the act of signing an instrument, to state, if such be the case, that he does it for the person for whom he is acting, that the omission so to sign is of itself strong evidence that he contracted for himself, and not for another. Had the notes in this case been signed Zebedee Cook, or Cook & Foster, for John Arnold, the evidence exhibited in this case would, without doubt, be sufficient to show that the agent was authorized so to do. But although authorized, he might still act for himself; and it appears, by the manner in which he signed, so to have been done.
We are all satisfied that the admission of the evidence upon which the verdict was found for the plaintiff was wrong. The verdict must therefore be set aside, and a new trial is granted

 No proof can be admitted between the original parties, to show that an instrument under seal was made without any consideration, (Platt. Cov. 40,) excepting in *35 conveyances under the statute of uses; but it is otherwise in respect to contracts not under seal, especially where no consideration is mentioned.
A deed or contract under seal cannot be discharged by parole or writing not under seal; but an executory agreement in writing not under seal may, before breach, be discharged by paroi agreement. — Davey vs. Prendergrass, 5 B. & A. 187. — 2 Chitty R. 336. — Bayles vs. Dinely, 3 M. & S. 480. — Crane vs. Newell, 2 Pick. 612. — A writing under seal may be pleaded as an estoppel; but a writing not under seal cannot be so pleaded. — Skaife & Al. vs. Jackson, 3 Barn. & Cresw. 421. — 5 D. & R. 290.— Fountain vs. Grales, Carnb. 59. — Stratton vs. Rastall, 2 D. & E. 366. — 1 Chitty, Pl. 634, 7th ed. — Davis vs. Tyler, 18 Johns. 490. — 5 Bac. Ab. 432.

 See 1 Phil. Ev. 540, 7th ed., and the cases there cited.— Cuff vs. Penn, 1 M. & S. 51. — Wilson vs. Hart, 7 Taunt. 295. — I B. Moore, 45. —B. of Meath vs. Lord Belfield, 1 Wils. 215.

 2 W. Black. 1249.

 2 Bos. & Pul. 565.

 Want of consideration is, between the original parties, always a good defence. — Hill vs. Buckminster, 5 Pick. 391. — Mills vs. Wyman, 3 Pick. 207. — Amherst Academy vs. Cowls, 6 Pick. 427. — Sed vide Bowers vs. Hurd, 10 Mass. Rep. 427.

 The acknowledgment in a deed of the receipt of money is conclusive evidence *37 against the party executing the deed of such receipt. — Baker vs. Dewey, 1 B. & C. 704 — Rowntree vs. Jacob, 2 Taunt. 141.— Griswold vs. Messenger, 6 Pick. 517. Emers vs. Chase, 5 Greenl. 232. — Sed vide Bowen vs. Bell, 20 Johns. 338. — Scott vs. Wilkinson, 17 Mass. Rep. 249.

 7 Mass Rep. 518.

 6 Mass. Rep. 430.