SHIRAS *against* MORRIS and others.

ASSUMPIT, tried at the New York sittings, April 22d, 1822, before WOODWORTH, J.

The action was for money advanced by the plaintiff, to be applied in finishing the steamboat New Orleans, built by a voluntary association of persons calling themselves the New Orleans and Natches Company, of which the defendants were members with Robert Fulton, in his lifetime,

One who borrows money, as the assumed agent of another, drawing a bill upon his pretended principal for the amount, which is protested for nonacceptance, is not a competent witness for the lender, in an action by him against such principal for the money lent.

On the trial, the plaintiff relied on David Cooke, as the witness to make out his case. He swore that he was the agent of Fulton, from the spring of 1814, till his death. John Livingston had the agency immediately before, and the witness was his sub-agent at the time. The agency of the witness consisted in assisting to procure materials, supplies and money in building the steamboats Vesuvius and Ætna; and after Livingston's agency ceased, the witness conducted the whole business. During this time he was in the habit of drawing bills on Fulton, and borrowing the money for the bills. These were duly honored. They were sometimes signed by his own name, and sometimes as *agent*. Whenever he omitted, however, to annex the word *agent* to his name, it was merely accidental. Neither he, nor any other person to his knowledge, considered him individually liable. He was the agent of Fulton in build-

The principal is liable, if such money come to his use, and he recognize the loan by telling the agent he will pay it, though borrowed, in the first instance, without his authority.

ALBANY,
Oct. 1827.

Shiras
v.
Morris.

ing the boat in question. Fulton died during the building of this boat in 1815; but the *witness continued to act in building the boat, in the same manner as before. He did not hear of the company till March or April 1815, after Fulton's death. He continued, because he inferred from the silence of the company that they acquiesced in it; and he had no reason to believe that they intended to counter-mand his agency. On the 26th of April, 1815, the work-men refused to go on for want of funds, when the plaintiff, residing at Pittsburgh, advanced $3000, to enable him to go on with the work, which was applied accordingly. The money was advanced on the exclusive credit of the company, and the witness drew a bill on the secretary of the company, which was protested; but before the witness heard of the protest, he received a draft from the secretary for $4000, a part of which he paid to the plaintiff. On settling with Morris and Lynch, a committee of the company at New York, they promised to pay the plaintiff; and agreed to pay the witness a salary for his past and future services. He afterwards proceeded with the building; and received various advances from the company. The boat was afterwards completed and delivered to the company. The bill drawn by the witness was signed by him without the addition of *agent*.

Verdict for the plaintiff subject to a case.

*J. Woodward* and *J. Anthon*, for the plaintiff.

*C. Graham* and *B. Robinson*, for the defendants.

*Curia,* per SUTHERLAND, J. I am inclined to think Cooke was an incompetent witness. He had no authority, as agent of the company, to draw a bill of exchange upon them. No express authority is pretended. He was rather the sub-agent of Fulton, than the agent of the company; and it affirmatively appears that this was the only bill ever drawn by him on the company. They, therefore, have never ratified or sanctioned this assumed authority. The bill was moreover drawn in the individual name of Cooke, not as agent; and there is nothing *appearing on the face

[*62]

of the bill to show that he was acting in a representative capacity. Independently of his own testimony, which, upon the preliminary inquiry, must be excluded, (*Mott* v. *Hicks*, 1 Cowen, 535,) there is nothing in the case to show that the witness advanced the money on the credit of the defendants; and not upon the individual credit of the witness, Cooke. It would seem, therefore, that he must be responsible to the plaintiff if this action should fail; and, of course, had a direct interest in the event of the suit. (Chit. on Bills, 36, note (1,) and the cases there cited. 11 Mass. Rep. 27, 54. 5 Mass. Rep. 299. 6 Mass. Rep. 58. 15 John. 1. 1 Cowen, 513.)

ALBANY,<br>Oct. 1827.<br><br>Shiras<br>v.<br>Morris.

Upon the testimony of Cooke, I think the plaintiff was entitled to recover. He proves an acknowledgment of this debt as a debt of the company, and a promise to pay it by Morris and Lynch acting as a committee of the company.[1] He also shows that the money was appropriated to the use of the company; and even admitting that his agency, strictly, terminated at the death of Fulton, (which, however, I do not think was the case,) yet the continuance of his authority as agent subsequent to that period, is admitted on the part of the company, by the whole course of their correspondence with him.

But on the first ground a new trial must be granted.

New trial granted.

[1] Ratification relates back to the time of the original transaction. *Lawrence* v. *Taylor*, 5 Hill, 107. A subsequent ratification is equivalent to an original authority. *Moss* v. *The Rossie Lead Mining Co.*, 5 Hill, 137. A ratification of a part of the transaction is an affirmance of the whole. Ib. The ratification must precede the commencement of the suit against the principal. *Gorham* v. *Gale*, 7 Cowen, 739.