Edmund Taber *vs.* Henry Cannon & others.

*It seems* that an agent who is employed by the owners of a whale ship to fit her for sea, and purchase the necessary supplies for her voyage, cannot bind the owners by making a negotiable note, or accepting a negotiable bill of exchange, in their names, as agent, in payment for such supplies.

A., who was authorized, as agent, by the owners of a whale ship, to fit her for sea and purchase supplies for her voyage, bought the supplies of B.: B. drew a bill of exchange for the amount of the supplies, payable to his own order, and addressed " to the agent and owners " of the ship: A. accepted the bill, by writing his name thereon, without any addition indicating his agency.  *Held*, in a suit by the indorsee of the bill against the owners of the ship, as acceptors, that, even admitting the authority of A to bind them by accepting for them as their agent, yet that he had not bound them by the acceptance, as made, and that he alone was liable as acceptor.

Assumpsit, by the indorsee of a draft, which was as follows " New Bedford, 6th mo. 17, 1841.   Twelve months after date, value received, please pay to my own order, five hundred and sixty two $\frac{40}{100}$ dollars, and place the same to the account of, as advised, yours,                                  G. Hathaway & Co.

" To the agent and owners of the barque Endeavor, of New Bedford."

*Dewey*, J. before whom the trial was had, made the following report :   The draft was accepted, by the name of " William H. Stowell " being written thereon, without further addition indicating the capacity in which he accepted it.   It was admitted that the defendants were the owners of the barque Endeavor. It was admitted or proved that William H. Stowell was agent for said barque, in fitting her out and furnishing the proper supplies for a whaling voyage ; that said draft was for the amount of the sums due to the drawers for goods furnished for the barque ;   that the goods were purchased by said Stowell, as agent for the barque, and went to the use of the same ; and that the drawers had been paid for the goods in no other way than by the acceptance, as aforesaid, of said draft.   It was also

admitted that said Stowell was the owner of five sixteenths of said barque. The defendants admitted that said Stowell had the usual authority of an agent for procuring supplies for a ship, and fitting her out. But they insisted, 1st, that he had no authority to accept a draft on the owners of the barque for purchases made by him for the barque; 2d, that upon inspection of the draft and acceptance thereof, it did not purport to be an acceptance as agent of the barque, and was not, therefore, binding upon the owners; 3d, that it was not competent for the plaintiff to establish the fact of such acceptance being made as agent, and in behalf of the owners, by parol evidence.

The judge ruled as follows : "If the owners of a whale ship, engaged in fitting her out for a whaling voyage, appoint an agent, to whom is wholly committed the fitting of her out, giving such agent the general power and authority to fit her out, at his discretion as to the extent of purchases and the time of credit to be obtained on goods purchased; if such agent, in the discharge of such agency, makes suitable and proper purchases of goods for such ship, and in payment therefor accepts drafts, as agent of such owners — it being admitted or proved that such goods were a part of the outfits of the ship, and went to the benefit of her owners — and if it further appears that the owners are not deprived of any benefit of set-off, or any defence which they might have against the owners of the goods sold, had the action been brought in their names for the goods sold; in such state of facts, and in the absence of any general and established usage to the contrary, the owners of the ship would be bound by such acceptance of their agent, and liable to pay the same : That, as to the form of the acceptance of the present draft, if the jury were satisfied that this form of making an acceptance, by writing the name of the agent, without any description of his character of agent annexed thereto, was in accordance with the general usage and custom of making acceptances, as agents and in behalf of the owners of whale ships, they might, notwithstanding such form of acceptance, find that this draft was accepted by Stowell, as agent; and that the fact of his being part owner would not impair the validity

of such acceptance, or prevent its liability from attaching to the owners generally."

The jury were further instructed, that "if the draft was drawn and accepted on any new agreement, or any extension of credit given to Stowell personally, and on his own account, the defendants were not liable on the same."

The case was submitted to the jury, upon the evidence offered by the parties, and the ruling of the judge, as above stated; and a verdict was returned for the plaintiff. Verdict to be set aside, and a new trial granted, if the rulings at the trial were erroneous in law, and not sufficiently favorable to the defendants; otherwise, judgment to be entered on the verdict.

*Coffin*, for the defendants.

*Eliot*, for the plaintiff.

SHAW, C. J. This case involves a principle of considerable importance to those engaged in the whaling trade. It is founded on a bill of exchange, and brought by an indorsee against the defendants as acceptors.

Two general questions arise in the case. *First*, whether an agent to make purchases and obtain supplies for the outfit of a whaling vessel has authority to bind the owners, by making a negotiable promissory note, or accepting a negotiable bill of exchange, in their names, as agent. *Second*, whether, in the present case, the act of the agent, under the circumstances stated, did bind the owners as acceptors; or whether the acceptance must be deemed his own personal undertaking.

As a general rule, a special agent, or an agent employed to make purchases for his principal, has no authority to bind his principal by a negotiable promissory note or bill of exchange. *Webber* v. *Williams College*, 23 Pick. 302. *Rossiter* v. *Rossiter*, 8 Wend. 494. The case of *Tappan* v. *Bailey*, 4 Met. 529, cited by the plaintiff's counsel, in which a company was charged on a promissory note given by their agent, was decided on the ground that the articles of agreement constituted the defendants partners; that the object being to carry on a trading establishment, in a special manner, in which buying, selling, and trading for profit, were contemplated, an authority to give

notes and draw bills was implied from the nature of the busi ness with which the agent was intrusted. But we can per ceive nothing in the nature of the business of fitting out a whale ship, which varies the general rule of law. It consists in purchasing provisions, materials and stores, in repairing ships, &c., involving nothing more than contracts for labor and materials, or goods sold, in which there is no partnership, no buying, selling, or trading for profit.

It is urged, as a reason in favor of such authority, that it is beneficial to the owners to obtain their goods on a credit. Be it so. The agent undoubtedly has authority to bind his principals, by a contract of sale, unless, the principals being known at the time, the sellers elect to give credit to the agent. But although charged to the agent, if the principals are not known at the time, they may be charged and held liable when discovered. *Thomson* v. *Davenport,* 9 Barn. & Cres. 90. And there is good rea son for this difference. In a contract of sale, the owners can be liable to no one but the actual sellers of the goods; the consideration may be inquired into; all the circumstances attending the sale may be shown; and all payments and offsets may be adjusted; all which would be precluded, if an action could be maintained by the indorsee on an acceptance.

Nor can this point, which is one of general law, be much aided by local custom. If such notes and acceptances are frequently given by agents, and afterwards voluntarily taken up by the same or other agents, it proves nothing as to the liability of the principals. Even if such a note should occasionally have been provided for by owners, (a very equitable thing for them to do, if the debt has not been paid,) it proves only that the owners misunderstood, or were willing to waive, their legal rights.

But we have not thought it necessary to decide this case upon the ground that the agent had no legal authority to bind his principals; because the court are of opinion, that, in the present case, the agent, even if he had power to bind the owners, has not done so by the acceptance in question.

It is very clear, that where it is apparent, from the form of

the contract, that the agent intends to bind himself, and not his principals, and this is accepted by the seller of the goods, the principals are not liable. And there is often a great convenience in this course, which renders the intent probable ; and this, connected with the form of the contract, may be decisive. If the credit of the agent is good, and satisfactory to the seller of the goods, it may be convenient to him to have the acceptance of an individual named, in preference to a more indefinite liability of a body of persons, as " owners," &c. not named, but to be ascertained by other evidence. It is a convenience to the agent, because it enables him to take a full discharge from the sellers, which gives him a voucher to the account, against his principals, and enables him at once to settle with them.

But, independently of these considerations, we think it is set tled by authorities, that when it is known that a party is acting as agent, or when a draft is addressed to him as agent, yet, if he give or accept it in his own name, he is personally liable ; and, as a converse of this proposition, his principal is not liable. The strong case to this point, in our own State, is *Stackpole* v. *Arnold,* 11 Mass. 27, which, ever since its decision, has been regarded as a case of the highest authority. It was that of an agent, who gave his own note for a premium of insurance on a policy made for his principal. See *Bedford Commercial Ins. Co.* v. *Covell,* (*ante,* 442.) An early case was that of *Thomas* v. *Bishop,* 2 Stra. 955, and Rep. Temp. Hardw. 1, where the acceptor was servant of the York Buildings Company. The draft was addressed to him as cashier of that company, and the letter of advice was addressed to them. Yet it was held that he, having accepted it generally, was personally liable to an indorsee. In *Goupy* v. *Harden,* 7 Taunt. 159, it was held that an agent, purchasing bills in London, for his principal in Paris, at a small commission, having put his own indorsement on the bills, was liable to his principal, as indorser. So when one who was the known agent of a country bank, to whom the plaintiff sent money to obtain a bill on London, drew in his own name, with directions to charge the amount to the Durham Bank, he was

held personally liable, although the plaintiff knew he was such agent, and supposed he was acting on account of the bank *Leadbitter* v. *Farrow*, 5 M. & S. 345. There is a very strong case, to the like effect, showing that when the agency is fully proved, and even when it is known to all the parties, if the agent signs a negotiable obligation in his own name, he is bound. *Mayhew* v. *Prince*, 11 Mass. 54. Even when one signs as agent, it must appear in a suit brought by an indorsee, that the agent was authorized at the time; and subsequent ratification cannot make it good, as the act of the principal. *Rossiter* v. *Rossiter*, 8 Wend. 499.

In looking at the facts of the present case, it appears that the bill was addressed to the "agent and owners" of the ship, and accepted simply by Stowell. It appears to us therefore, that, within the authorities, it is the personal obligation of Stowell, and not the obligation of the owners of the ship. If it was not their obligation at the time, the action cannot be maintained by an indorsee, by showing the circumstances of the original contract; that the goods went to the use of the defendants; that the sellers, the drawers of the bill, had received no other payment, and the like. Whether these circumstances might amount to proof of an implied contract between the original sellers of the goods and the owners of the ship, it is unnecessary to consider. If they could be relied on, as proof of such implied contract, it would not be negotiable, and would not aid this plaintiff. It was considered as of some importance in the present case, that it was left to the jury, and found by them that the defendants would have had no offset or other defence, if the suit had been brought by the drawers, Hathaway & Co., for their goods. The verdict does not affirm that the owners had not paid Stowell, or accounted with him, for these supplies; nor, indeed, could it appear, because, as against an indorsee, no such issue could be taken. He must recover, if at all, simply upon proving the authority of the agent to accept for the principal, and on actual acceptance by him. If the agent had received payment of the defendants, it would constitute no defence, and could not be given in evidence. As was remarked in *Web-*

39 *

*ver* v. *Williams College*, 23 Pick. 304, the nature of the issue between indorsee and promisor or acceptor precludes the inquiry whether there may be matter of defence, or not, as between the original parties.

The court being of opinion, that this acceptance bound the agent only, and not the defendants as his principals, and the direction to the jury not having been in accordance with this view, the verdict must be set aside and a                          ·

*New trial granted.*