Moncure, J.
delivered the opinion of the court.
This was an action of debt brought by Wilkinson & Hunt against Eobert H. Early on a negotiable note in the following form:
$ 913 50. Kanawha County, October 3d, 1850.
Four months after date, I promise to pay to Wilkinson & Hunt or order, without offset, negotiable and payable at the office of discount and deposit of the Bank of Virginia at Charleston, Kanawha, nine hundred and thirteen dollars and fifty cents, for valué received.

Robert H. Early,

[For Sam?I H. Early.
The defendant demurred generally to the declaration, and also pleaded nil debet. The plaintiffs joined in the demurrer, and joined issue on the plea. The demurrer was overruled, and verdict and judgment were rendered for the plaintiffs. On the trial of the issue the plaintiffs offered to introduce the note as evidence, which the defendant admitted to be wholly in his handwriting: but he objected to its introduction, on the ground that on its face it purported to be the note of Samuel H. Early, and was variant from the note described in the declaration. The court overruled the objection, and permitted the note to be given in evidence; to which the defendant excepted. The question which was first argued before us, and first presents itself for our decision, arises upon the opinion of the court overruling the objection to the note as evidence; and perhaps also, upon the judgment of the court upon the demurrer. That question is, whether the note upon its face purports to be the proper note of Eobert H. Early, who wrote and signed it, or of *70 Samuel H. Early, for whom it appears, by the words in brackets at the foot of the signature, to have been given?
An agent, in executing a note for his principal, supp0Sing Mm to have authority to execute such note, may bind either himself or his principal. Whether the one or the other be bound, depends upon the intention of the parties; and that intention must appear from the note itself. If the name of the principal be not referred to in the note, the agent who signs it is alone bound. The difficulty arises only in those cases (which however are numerous) in which the name of the principal is referred to either in the body of the note or at the foot of it. “ As the forms of words in which contracts may be made and executed,” says Chief Justice Shaw, in Bradlee v. Boston Glass Co., 16 Pick. R. 347, “ are almost infinitely various, the test question is, whether the person signing professes and intends to bind himself, and adds the name of another to indicate the capacity or trust in which he acts, or the person for whose account his promise is made; or whether the words referring to a principal, are intended to-indicate that he does a mere ministerial act, in giving effect and authenticity to the act, promise and contract of another. Does the person signing apply the executing hand as the instrument of another, or the promising and engaging mind of a contracting party ?” — “ The true and best mode of an agent’s signing or endorsing a promissory note for his principal, where he means to make the latter and not himself personally responsible thereon,” says Story in his work on Promissory Notes, § 68, “ is to sign, or endorse, the same, ‘ A B, (the principal,) by his attorney or agent C D.’ If the signature be 1 C D, for A B,’ (the principal,) it will be equally available, though not so formally correct. But in the practice of common life, there are many deviations from this course, and occa *71 sionally they give rise to great embarrassments, in endeavoring to ascertain whether, in the actual language used, the agent is personally bound, or the alone is bound, or both. Neither is it possible to extract from the authorities any consistent rules to guide us in this matter of interpretation.” See Story on Agency, § 274-278; 1 American Leading Cases, 2d edition, p. 625-634, notes.
In the great number and variety of cases on this subject in the reports, not one has been found in which the note was similar in form to that which was executed in this case. The note in this case is in the perfect form of a negotiable promissory note of Robert H. Early, except that under his signature are the words “ (for Sam’l H. Early,)” in brackets. Without the addition of these words, it is certain that Robert H. Early would alone have been bound on the note, even though he may have given it as the known agent of Samuel H. Early. On the other hand, it may be said that if these words had been added, without being enclosed in brackets, and Robert H. Early had authority to sign the note as agent for Samuel H. Early, the latter would alone have been bound on the note, though the mode of executing the note by procuration would not, in that case, have been strictly formal. The question then depends alone upon the import of the brackets; and though it may seem strange that we should give so much import to a circumstance apparently so slight, yet we are of opinion that it is sufficient to turn the scale, and to indicate an intention on the part of Robert H. Early not to do “a mere ministerial act in giving effect and authenticity to the promise of another,” but “ to indicate the capacity or trust in which he acted, or the person for whose account his promise was made.” In the construction of the note, the whole of it should be taken together, and effect must if possible be given to every part of it. It is not pre *72 sumable that any word or sign in the note was used without some meaning. We must presume, therefore, something was intended by the use of the brackets. What was thereby intended ? The ordinary use fo-g^ets in printing, is to enclose a parenthesis; which is defined by lexicographers to be, “ a sentence so enclosed in another sentence as that it may be taken out without injuring the sense of that which encloses it.” Applying that definition to this case, the parenthesis “ for Samuel H. Early” may be taken from this note without injuring the sense of the balance, as understood and intended by the parties. The words, “ I promise to pay,” in the body of the note, will then plainly refer to Robert ,H* Early, whose name is thereto subscribed as maker. If Robert H. Early had intended to bind, not himself, but Samuel H. Early as maker of the note, he would have given more prominence to the name of the latter, which then would have been the important name. He would not have enclosed it in brackets, so that it might be taken from the note without injuring the sense of the balance. He would rather have enclosed his own name in brackets, as the name of the mere agent by whom it was signed. They were worse than useless, on the supposition that Samuel H. Early was intended to be bound. They certainly cannot contribute in any way to show such an intention. On the other hand, we think they serve j;o show a contrary intention, an intention to take from the words enclosed the effect they might otherwise have; to give greater prominence to the name of Robert H. over that of Samuel H. Early, and to indicate that the former was the promiser, and the latter the person for whose account the promise was made, and to whom, as between themselves, the amount of the note was to be charged. This we believe is the only meaning of which the brackets are susceptible: It is a rational meaning, and is consistent *73 with every other part of the note. We therefore believe it was the meaning in which they were used by the author of the note, in whose handwriting it was wholly written, and who would seem to have been familiar with the proper manner of drawing such instruments.
After the court had permitted the note to be given in evidence to the jury, the plaintiffs introduced a witness for the purpose of proving that about a month before the note to the plaintiffs was given, a similar note was given to him, except that the words “for Samuel H. Early” were not enclosed in brackets, which note was exhibited on the trial; that credit was given by the witness in that transaction to Robert H., and not to Samuel H. Early; and that when the note was written and handed to him, signed “ Robert H. Early, for Samuel H. Early,” witness asked Robert H. why he had made and signed the note in that form, to which he replied, that in the case of the death of either his brother or himself, the note would show on which account, or for whose benefit it was given, &c. &c. To the introduction of which parol testimony and the note offered in connection therewith, the defendant objected, on the ground that it was irrelevant and inadmissible. But the court overruled the objection, and permitted the evidence to go to the jury, to which the defendant also excepted. The questions arising on this opinion of the court, and argued by the counsel, were: 1st, whether parol evidence was at all admissible in the case; and if so, 2dly, whether the evidence offered was not irrelevant, and on that ground inadmissible.
First, as to the admissibility of parol evidence in such a case. There is certainly no better settled general rule of law than that parol evidence is inadmissible to contradict or vary the terms of a written contract. There is another general rule, which has been *74 established and recognized by a long series of decisions, (but which has been said to be not perfectly accurate as a definition,) that parol evidence is admissible to explain a latent but not a patent ambiguity. There are cases which would seem rather to fall under the head of patent than of latent ambiguity, in which parol evidence has been held to be admissible. Judge Story, in the case of Peisch v. Dickson, 1 Mason’s R. 9, after referring to the rule in regard to patent and latent ambiguity, says, “ The difficulty lies not in the rule itself, but in applying it to particular cases, where the shades of distinction are very nice. There seems indeed to be an intermediate class of cases, partaking of the nature both of patent and latent ambiguities; and that is, where the words are all sensible, and have a settled meaning, but at the same time consistently admit of two interpretations, according to the subject matter in the contemplation of the parties. In such a case, I should think that parol evidence might be admitted, to show the circumstances under which the contract was made, and the subject matter to which the parties referred.” The case of a note signed by one person for another, (at least where it is doubtful on the face of the note which of the two is intended to be bound,) would seem to be one of the intermediate class referred to by Judge Story, or to be governed by the same principle. The doubt in that case is, whether the person who signed the note intended to bind himself or another; and that doubt may be perfectly removed by proof of the surrounding circumstances, in regard to which a court of construction may be placed, by parol evidence, as nearly as possible in the situation of the party whose written language is to be interpreted; the question being, what' did the person thus circumstanced mean by the language he has employed? 1 Greenl. Evi. § 295. “The patent ambiguity of which Lord Bacon speaks,” says the *75 same author, “must be understood to be that which remains uncertain to the court after all the evidence of surrounding circumstances and collateral facts, which ° . is admissible under the rules already stated, is exhausted.” Id. § 300. And “ no judge is at liberty to pronounce an instrument ambiguous until he has brought to his aid, in its interpretation, all the lights afforded by the collateral facts and circumstances which, as we have shown, may be proved by parol.” “ The language may be inaccurate,” says Wigram, in his admirable treatise on the interpretation of wills, p. 175-6 ; “ but if the court can determine the meaning of this inaccurate language, without any other guide than a knowledge of the simple facts, upon which, from the very nature of language in general, its meaning depends, the language, though inaccurate, cannot be ambiguous. The circumstance that the inaccuracy is apparent on the face of the instrument cannot in principle alter the case.” It has been decided in several cases, that where an ambiguity arises on the face of an instrument, whether the person signing it, or the person for whom it is given, was intended to be bound, parol evidence is admissible to remove the ambiguity. Mechanics Bank of Alexandria v. The Bank of Columbia, 5 Wheat. R. 326, unanimously decided by the supreme court in 1820, is a leading American case on the subject, and expressly decides the question affirmatively. So does the case of Lazarus v. Shearer, 2 Alab. R. 718. In the case of Bradlee v. Boston Glass Co., 16 Pick. R. 347, before cited, parol evidence was introduced by the plaintiff without objection, and commented on by the learned chief justice, in delivering the- opinion of the court. Indeed, we have seen no case in which parol evidence for such a purpose has been held to be inadmissible. The case of Stachpole v. Arnold, 11 Mass. R. 27, was much relied on by the counsel of the appellant in this case, to show that such evidence is inad *76 missible. In that case tbe name of the principal did not appear on tbe face of tbe note; and it is a familiar well settled principle that be cannot be bound in such case. The note on its face was plainly the note 0f -the person whose name was thereto signed, and of no other person; and to have admitted parol evidence to show that it was intended to be the note of another, would have been directly contrary to the rule which declares such evidence inadmissible to contradict or vary a written contract. The great object of the judge, in his learned opinion in that case, was. to show that this rule is not confined to specialties, or even contracts under the statute of frauds, but extends to all written contracts. Not one word is said in the whole opinion which indicates that parol evidence would be inadmissible where it is doubtful on the face of the instrument which of several persons was intended to be bound; but the contrary is indicated throughout the whole opinion. After laying down the general rule of exclusion of such evidence, on page 31, he adds, “provided the contract is perfect in itself, and is capable of a clear and intelligible exposition from the terms of which it is composed.” Again, on page 32, he says, that a “ contract in writing, perfect in itself, and containing no ambiguity on the face of it incapable of explanation, cannot be enlarged or diminished by oral testimony. And on page 33, in speaking of the notes on which the suit was brought, he says, “ they have no ambiguity upon the face of them,” &c.
Secondly, as to the irrelevancy of the evidence in this case. There is perhaps no question of greater difficulty in the administration of justice, than that which often arises in regard to the relevancy of evidence to the issue. It is the duty of the court, says Philips, “ to confine the evidence to the points in issue, that the attention of juries may not be distracted, nor the public time needlessly consumed; but in deciding *77 that the evidence of any particular circumstance is not receivable upon this ground, the court must impliedly determine that no presumption to be drawn from circumstance ought properly to have an effect upon the minds of the jury.” It is obvious therefore that a great deal must necessarily be left to the discretion of the court of trial, in determining whether evidence is relevant to the issue or not. The question involved in the issue in this case was, why were the words “ for Samuel H. Early” written at the foot of the note? Was it for the purpose of binding him as maker of the note, or merely for the purpose of indicating as between him and Robert H. Early, that the note was given by the latter on the account and for the benefit of the former ? As tending to throw light on this question, the plaintiffs proved that less than a month before the note was executed another note was given by the defendant similar in all respects to that, except as to amount, and payee, and in the omission of the brackets; and that the reason given by the defendant for adding the words “ for Sam’l H. Early” at the foot of the note, was “ that in the case of the death of either his brother or himself, the note would show on what account or for whose benefit it was given.” We are not prepared to say that this evidence did not tend to throw light on the question, and was irrelevant, supposing that there was such ambiguity on the face of the note as to render parol evidence admissible on the principles before stated. We do not mean to deny the correctness of the cases cited from East and Peake by the counsel of the appellant, (7 East 108; 5 Day’s Esp. Peake Ca. 95,) nor to contend that proof of one contract may be proof, by inference, of another. We mean only to say, in the language of Philips, (edition of 1849, vol. 1, p. 461,) that “ it may frequently be very proper, and in some cases absolutely necessary, to look beyond the transaction which is the immediate subject of enquiry *78 into previous transactions, for the purpose of making a jnst inference as to the knowledge of the parties, motives or intentionand to say, that this case, on the supposition above made, may come within that principle. The object of the evidence in such a case, is not to set up a contract, but to remove an ambiguity apparent on the face of the contract. In the case before cited from 5 Wheat. 326, other transactions were proved; and a check executed about the same time and in the same form (though upon a different bank) with that on which the suit was brought, was offered in evidence and held to be admissible.
But we have gone into the consideration of these two questions, in regard to the admissibility of parol evidence, and the relevancy of the evidence in this, case, not because it was necessary to decide them, but because they were discussed by the counsel, and are interesting questions, and we thought it might not be improper to express our views upon them. In this case we have already decided that the note upon its face was the note of Robert H. Early; and the plaintiffs, after introducing it, ought to have rested their case. The parol evidence offered by them to prove that the note was what it purported to be, was unnecessary, and therefore improper. Without it the jury would have been compelled, under the instruction of the court, to have found a verdict for the plaintiffs. But should the judgment, on that ground, be reversed?. For what purpose ? To be remanded to the court below that the same verdict and judgment may be rendered on the note without the evidence ? The public time may have been needlessly consumed by the introduction of the evidence in the court below, but can that time be regained by the consumption of more time in another trial ? We therefore think, that even if parol evidence be inadmissible in such a case, and *79 the evidence in this case was irrelevant, the judgment should not be reversed.
For these reasons, we are for affirming the
Daniel, J.
This is quite a novel case, and I have experienced much difficulty in bringing my mind to a satisfactory judgment on the questions which it presents. My first impressions were, I must confess, strongly in favor of the views urged by the counsel of the plaintiff in error; but on more mature reflection, I have felt constrained to concur in a judgment affirming that of the Circuit court. He who is sought to be charged with the performance of a written promise or engagement, made by himself in person, and endeavors to discharge himself of liability on the ground that his relation to the instrument is that of a mere agent for another, cannot complain of being subjected to a harsh requirement, when held bound to maintain that the instrument 'does unequivocally disclose such relation. It is true ’that in the case of Key v. Parnham, 6 Harr. & John. 418, it is stated as a rule, (and I have no doubt correctly,) that “ wherever, upon the face of an agreement, a party contracting plainly appears to be acting as the agent of another, the stipulations of the contract are to be considered as operating solely to bind the principal, unless it manifestly appears by the terms of the instrument that the agent intended to superadd or substitute his own responsibility for that of his principal.” Still the further rule asserted in the notes to the American leading cases, vol. 1, p."626, as fairly to be deduced from the decisions, is, I think, equally true, viz: that “ in determining whether a party contracts personally or as agent, the presumption is in favor of the former; that is, a party will be bound personally, unless his character of agent be clearly disclosed.”
Does the note on which this suit was brought show, *80 by plain and unambiguous words or signs, that the plaintiff in error was acting as the mere agent of an-in its execution ? I think not. The fact that the note was a negotiable one, and the consideration -¡¿¡^ any recital about the relation of the parties in the body of the instrument might therefore be regarded as informal, made it the more incumbent on the plaintiff in error, if indeed he was acting as the agent of another, to manifest his character, plainly, in the signature. I do not think that he has done so.
It is conceded by the counsel for the plaintiff in error that, in the signature and affix thereto, the form most generally used to designate the execution of a note by an agent has been departed from; yet he has referred to several cases decided by the supreme court of Massachusetts, in which, where the form of disclosing the name of the agents and principals in the signature was (with the exception hereinafter to be noticed) like that employed here, the principals were held bound.
When the usual mode of signing a note by attorney is adopted, A B by C D, no room is left for doubt or construction. The inference is plain, that the person who makes the note is performing a mere ministerial act in its execution. But where the note is signed, as it is in the case before us, “ Robert H. Early for Samuel H. Early,” or, as in Long v. Colburn, 11 Mass. R. 96, “ Pro William Grill — J. S. Colburn,” the intention of the parties is by no means so manifest. A doubt arises whether the person executing the note is acting as a mere agent, or is in fact giving his own note for and on account of the debt of another. In the case just above mentioned, and in other cases of a like character cited at the bar, counsel contended for the latter construction; and though overruled, and as I think properly overruled by the court, still it must be conceded that the meaning of the parties is not, in such cases, wholly free from doubt.
*81 The signature to the note here, however, is not simply “ Robert H. Early for Samuel H. Early.” The only words on the face of the paper which could denote an agency, or disclose that Samuel H. Early was in anywise connected with the transaction, (“ for Samuel H. Early,”) are included in marks or signs of parenthesis, which are generally used to indicate that the clause or words thus marked or included are not essential in the construction of the sentence. Has not the maker of the note thus given to the payee the privilege (as contended for by the defendant in error) to read the note as if the words “for Samuel H. Early” were not on it at all ? Be this as it may, the construction in favor of a mere agency by Robert H. Early in the execution of the note was not so clear as to justify the court in withholding the note from the jury-
The evidence offered by the defendant in error, after the introduction of the note, was, I think, improperly received. The declaration of his purpose and intention in respect to another isolated note, and having no connection with the one in suit, made by Robert H. Early at the time of its execution, could not be properly resorted to as furnishing any evidence of what he intended by the language and course adopted by him in the execution of the note in controversy: such testimony was wholly irrelevant.
I'do not perceive, however, how the plaintiff in error could have been prejudiced by its introduction. Having rested his defence on the construction to be given to the paper, and the court having permitted it to go to the jury, their verdict against him, in the absence of any further testimony, must have followed as a necessary consequence. The production of further testimony by the defendant in error in aid of the construction given by the court could, in the state of the case, be of no benefit to himself or injury to his adver *82 sai-y. I regard the introduction of such testimony, therefore, under the circumstances, as merely idle, and improper, as furnishing no ground on which to „ , round error. 1
j am for affii'ming the judgment, with costs to the appellee.
Note by Judge Moncure.
After the judgment had.been affirmed in this case, and during the same term, the counsel for the plaintiff in error presented to the court a petition for a rehearing, which was not granted. The argument contained in that petition is long and ingenious; but on the fullest consideration I am capable of giving it, my conviction of the correctness of the opinion of the court remains unchanged.
The question first presented for decision was, whether the note, on its-face, and without reference to extrinsic evidence, purported to be the note of Samuel H. Early, or of Robert H. Early. My opinion was, and is, that without the brackets it would have been, priiha facie, the note of Samuel H. Early, and that with the brackets it was, prima fade at least, the note of Robert H. Early: But that, in either case, extrinsic evidence would have been admissible to repel the presumption. The effect of the brackets, according to my interpretation, is only to shift the burden of proof. I can see nothing unreasonable in this. It is well settled that an agent may either bind himself or his principal by his contract; and that whether one or the other is bound, must depend on the construction of the contract. The evidence on the face of a contract entered into by an agent, predominates in favor of its being the contract, sometimes of the principal, and at other times of the agent. The line of separation is often indistinct. It has been decided in several cases, that though the proper form of signing a promissory note by procuration is “A B,” (the principal,) by “C D,” (the agent,) yet a note, signed “CD for A B,” is, prima fade, the note of the principal, if there be nothing on the face of the note to repel the presumption. I am not disposed to question the correctness of the decisions on this subject, which have been numerous and uniform, and should have the effect of settling the law. I think it probable, however, that persons unacquainted with these decisions would generally consider a note, signed “CD for A B,” as the note of C D, unless theTe was something on its face to show that it was the note of A B. But this case presents a new feature — such as appears in no reported decision. The words “ for A B” are enclosed in brackets. On which side of the indistinct line of separation does this new case fall? The case without the brackets would have been very near the line, though on that side which binds the principal. With the brackets, it may still be near the line, but, I think, is on that side of it *83 which binds the supposed agent. Were the brackets used without some meaning? It would be contrary to the best settled rules of construetion to suppose that they were. Then, with what meaning were they used? In my view of the case, they indicate an intention to cut off the words they enclose from the rest of the note, so far as B. H. E- and the payees or holders were concerned; and the words were added as a memorandum between E. H. E. and S. H. E., to shew thatB. H. E. was to pay out of the funds of S. H. E., or to charge the payment over to him. A person who executes a bond as surety sometimes adds the word “ security” to his name, and sometimes encloses the word in brackets, not for the purpose of affecting the obligee, but as a memorandum between himself and his principal. With a similar view the word “ ex’or,” “ adm’r” or “ guardian” is often added to a signature. The words “ for Samuel H. Early” were admitted by E. H. E. to have been added to his signature to the note to Duliug for the purpose of shewing for whose benefit it was given, and not for the purpose of binding S. H. E. or exempting E. H. E. from liability; and though a judgment was rendered on that note against S. H. E., who was prima facie liable, (the words “ for S. H. E.” in that case not having been enclosed in brackets,) yet there can be no doubt, I think, but that on proof of the extrinsic facts, a judgment could have been recovered against E. H. E. While such an addition, without the use of brackets, is sometimes made merely as a memorandum between the principal and agent, I think that with the use of them it would never be made for any other purpose. But surely it cannot be unreasonable to give to the addition enclosed iu brackets the prima facie effect of a mere memorandum between the principal and agent, and to throw upon the agent the burden of shewing that it was intended to make not him but the principal liable.
The facility which would be afforded to the forgery of commercial and other paper, and the difficulty which would attend the prosecution and proof of the forgery, were urged in the petition as reasons against the construction adopted by the court. The opinion of the court is of course based on the fact that the brackets were made by the agent; and merely expounds their meaning, supposing them to have been so made. In determining the preliminary question of fact, whether they were so made, the objections urged would be entitled to consideration. But that fact being determined in the affirmative, I do not see what consideration they are entitled to in deciding the question of law arising therefrom. It would have been almost as easy to have perpetrated a forgery in this case by cutting that part of the paper which contained the words “ for S. H. E.” from the rest, as by enclosing them in brackets; and the former mode would have been more apt to be resorted to than the latter.. I do not see the difficulty which the counsel for the appellant seems to see in framing an indictment for such a forgery. “ Proof of the altering of a part of a genuine instrument will support an indictment charging the defendant with having forged the instrument itself.” Archbold’s Crim. Pl. 358. There is no doubt that any, the slightest, alteration of a *84 genuine instrument in a material part, whereby a new operation is given to it, is a forgery; as for instance, making a lease of the manor of Dale appear to be a lease of the manor of Sale by changing the D to S; “or making a bill of exchange for £ 8 appear to be for £ 80 by adding a cipher to the 8.” Id. The forgery of a cipher is nothing more than the forgery of brackets joined together. If it be said that the forgery of the cipher might have been prevented by writing out the 8; so also the forgery 0f brackets may be prevented by executing notes in the proper form of procuration, as “ A B by C D.”
The learned counsel seems to have conceded in the petition, what I xmderstood him to deny in the original argument, that parol evidence was admissible to remove the ambiguity, if any, arising from the form of the signature. But he still contended that the evidence offered for that purpose in this case was inadmissible. When I prepared the opinion of the court, my individual impression was that the evidence would have been admissible if the note had not on its face purported to be what the evidence tended to prove it was; but as the court was unanimously of opinion that the note on its face purported to be the note of E. II. E., and as Judge Daniel was of opinion that the evidence would not have been admissible, and the other two judges had formed no opinion on that question, it was therefore left undecided in the opinion pronounced by the court. To affirm the judgment it was necessary to decide, either that the note purported on its face to be the note of E. H. E., or that the parol evidence waB admissible. We unanimously decided the former, but did not decide the latter, deeming it unnecessary to do so. My individual impression in regard to the latter remains unchanged; hut as the court has given no opinion upon it, I have not since given the question much further consideration, and will take no further notice of it here.