Bank of British North America *vs.* Robert Hooper
& others.

A bill of exchange, drawn by an agent in his own name, does not bind his principal though made for his benefit, and containing a direction to the drawee to charge the amount thereof to his account.

A bank, which has discounted bills drawn in his own name by the agent of a disclosed principal, cannot sue the latter, nor prove against his estate in insolvency, although the proceeds are applied by the agent to his use.

Appeal from a decree of the master in chancery in the matter of the estates of Horace Gray and Nathaniel Francis, insolvent debtors, of whom the appellees were the assignees. The parties submitted the case to the decision of the court upon a statement of facts, the material part of which was as follows :

Gray and Francis were partners in Boston, under the firm of Horace Gray & Co., whose principal business was to, purchase supplies for, and sell iron manufactured at various iron works, in which neither the firm nor Francis had any interest. One of these establishments was the Pembroke Iron Works, at Pembroke in the State of Maine, of which Gray, who had previously owned these works jointly with other persons, in May 1846 became sole owner, and, from that time till the commencement of these proceedings in insolvency in November 1847, carried on the manufacture of iron there, by Joseph Barrell, whom he employed as the general agent and superintendent, and paid by an annual salary, and authorized to raise money by giving drafts on Horace Gray & Co. for expenses incurred in such manufacture. And Horace Gray & Co. authorized Barrell to draw on them for such sums, and agreed to accept such drafts, and on the 26th of July 1847 informed the appellants by letter that they would accept " the drafts of Mr. Joseph Barrell drawn for account of Proprietors of Pembroke Iron Works." J. D. Andrews the indorser of the drafts hereinafter mentioned, made an arrangement with Gray to negotiate such drafts of Barrell, and to transmit the proceeds at his risk to Barrell, for which Andrews was

to receive a commission on the amount so negotiated by him and this arrangement was communicated to Barrell.

The appellants, who are a corporation created by act of parliament, and have a branch established at St. John in the Province of New Brunswick, discounted, at or immediately after their respective dates, six drafts, alike in form, amounting in all to $21,000, and indorsed by J. D. Andrews, of one of which the following is a copy : " $5,000.   Pembroke, September 8th 1847. Three months from date, for value received of this first of exchange, (second unpaid,) please pay to the order of J. D. Andrews, Esq. five thousand dollars, and charge the same to account of Proprietors Pembroke Iron Works.   Your humble servant,

" To Messrs. Horace Gray & Co. Boston.      Joseph Barrell."

The amounts of these drafts, deducting at the rate of six per cent. a year for the time which they had to run, were received by Barrell, and applied by him to the payment of expenses incurred in carrying on the manufacture of iron at said works.   The drafts were accepted by Horace Gray & Co., and charged in their books to " Proprietors Pembroke Iron Works."   At maturity, the drafts were presented for payment to the acceptors, and protested for nonpayment, and notice thereof given by mail to Barrell and Andrews.   No part of the drafts has been paid.

The master refused to allow either the drafts, or the consideration thereof, to be proved against the separate estate of Horace Gray.

This case was argued before that of *Eastern Railroad* v. *Benedict, ante,* 561.

*A. H. Fiske,* for the appellants, contended that, upon the facts stated, these drafts bound Gray as drawer; or if not, yet, as the original loan was for his benefit, the appellants might surrender the drafts, and prove against his estate for the consideration ; and relied upon *Huntington* v. *Knox,* 7 Cush. 374, 375, and *Fuller* v. *Hooper,* 3 Gray, 334, and cases cited for the appellants in that case, 3 Gray, 338.   He also contended that Gray, if not individually liable at law, as the drawer of these drafts, was liable in equity, citing *Van Reimsdyk* v. *Kane,* 1 Gallis. 630, and 9 Cranch, 162 ; that the holder of a note or bill of exchange,

who by any legal or equitable proceeding could compel pay ment, might prove his claim under the insolvent law, citing Eden on Bankr. (2d ed.) 138 ; 1 Mont. Bankr. (2d ed.) 163 ; Bayley on Bills, (2d Amer. ed.) 452 ; *Ex parte Dewdney,* 15 Ves. 495 ; *Ex parte Williamson,* 2 Ves. Sen. 252 ; and that, though it might have been more regular to bring this claim before this court by petition in equity, under *St.* 1838, *c.* 163, § 18, still the court, having the case before them, would decide it. *Barnard* v. *Eaton,* 2 Cush. 294.

*S. Bartlett & C. B. Goodrich,* for the appellees. An appeal in the matter of a claim against the estate of an insolvent debtor is to be tried like an action at law, and not to be influenced by equitable considerations. *St.* 1838, *c.* 163, § 4.

These bills, on their face, disclose no agency on the part of Barrell, the drawer. There is no word "agent" attached to his signature, and no name of a principal in the margin of the bill; and this case is thus distinguished from *Fuller* v. *Hooper,* 3 Gray, 334. The mere direction in a foreign bill of exchange, to charge the amount drawn to the account of a party named, does not make that party liable on the bill as drawer ; but personally binds the agent drawing it ; which would not be the case if the principal were disclosed, and liable on the bill. *Mayhew* v. *Prince,* 11 Mass. 54. *Ducarry* v. *Gill,* 4 Car. & P. 121.

The bill disclosing no agency on its face, and the principal having been known at the time of making the contract, (as appears by the letter of H. Gray & Co. to the appellants of July 20th 1847,) extrinsic evidence is inadmissible to charge the principal thereon, or to prove the bill against his estate. *Stack-pole* v. *Arnold,* 11 Mass. 27. *Taber* v. *Cannon,* 8 Met. 456. *Fuller* v. *Hooper,* 3 Gray, 341. *Shaw* v. *Stone,* 1 Cush. 228. *Minard* v. *Mead,* 7 Wend. 68. *Fenly* v. *Stewart,* 5 Sandf. 101. *Beckham* v. *Drake,* 9 M. & W. 92. *Emly* v. *Lye,* 15 East, 7. *Ex parte Emly,* 1 Rose, 61. *Siffkin* v. *Walker,* 2 Campb. 308. Byles on Bills, (5th ed.) 26, 349.

Nor can the appellants, having discounted the bills upon the credit of the names thereon, and of the promised acceptance of H. Gray & Co., now prove the consideration thereof against the

48*

separate estate of Gray, as for money had and received to his use. *Emly* v. *Lye*, 15 East, 7. *Ex parte Emly*, 1 Rose, 65. *Ex parte Blackburne*, 10 Ves. 204. *Paige* v. *Stone*, 10 Met. 160. *French* v. *Price*, 24 Pick. 13. *Graeff* v. *Hitchman*, 5 Watts, 454. 1 Mont. Bankr. (3d ed.) 194. 1 Cooke Bankr. (8th ed.) 174. Owen Bankr. 173, and cases cited.

DEWEY, J.   The consideration of the questions arising in the case of *Eastern Railroad* v. *Benedict, ante,* 561, has led to a full examination of the adjudicated cases upon the question of the right of the principal, or real party in interest, to sue in his own name on a written promise made to his agent; and, as connected therewith, the liability of the principal to be sued and charged in damages for the breach of a contract made by his agent.

To a certain extent, we have found the law to authorize the introduction of oral evidence as to the parties in interest, and for the purpose of showing from whom the consideration moved, or for whose benefit the promise was made.   The cases cited, and particularly the English cases, are very decisive in favor of the exercise of this right in cases of ordinary simple contracts, extending it perhaps somewhat further than we should feel authorized to do, without modifying some of the views stated in *Stackpole* v. *Arnold,* 11 Mass. 27 ; unless those remarks are to be considered as made peculiarly with reference to bills of exchange or negotiable promissory notes.   While the recent English cases are found to be very strong in favor of the right to charge an unknown principal upon contracts made by his agent, upon oral proof of who is the real party ; yet there will be found to be a leading distinction taken between cases of commercial paper in the form of bills of exchange and negotiable promissory notes, and other simple contracts—holding that no one but a party to such negotiable paper can be sued for the nonpayment thereof.   Byles on Bills, (5th ed.) 26.   Such is the doctrine of *Emly* v. *Lye,* 15 East, 7, where it was held that in the case of a bill of exchange drawn by one only, it was not competent to charge others as parties in interest, but that the liability was confined to the party who signed the instrument.   In *Beck-*

*ham* v. *Drake*, 9 M. & W. 92, where upon a written contract it was held that the real party in interest might be shown by oral evidence, the court distinctly except negotiable instruments from the application of the rule, Lord Abinger saying: " Cases of bills of exchange are quite different in principle." " By the law merchant, a chose in action is passed by indorsement, and each party who receives the bill is making a contract with the parties upon the face of it, and with no other party whatever."

The American cases will, we think, be found to maintain the same doctrine. *Pentz* v. *Stanton*, 10 Wend. 276, is strong to this point. Our own case of *Stackpole* v. *Arnold*, 11 Mass. 27, was a direct application of this principle. That was a suit upon a negotiable note, and the defendant's name was not on the paper *ante*, 565. The oral evidence offered was however full to the point, that the person who signed the note was in fact the agent of the defendant, and that the note was given for the defendant's debt. But the court held that no action could be maintained on the note against the defendant. That case has ever been recognized, certainly to the extent of its application to negotiable paper, as the law of Massachusetts. *Bedford Commercial Ins. Co.* v. *Covell*, 8 Met. 443. *Taber* v. *Cannon*, 8 Met. 460. If sound, it meets the present case, and discharges the private estate of Horace Gray from all liability on the draft.

It is urged, for the appellants, that that case must be considered as overruled by the late case of *Huntington* v. *Knox*, 7 Cush. 371 ; and especially that it was in conflict with the principles stated by the court in the opinion given in that case. It is true that the court do there recognize and apparently fully indorse the case of *Higgins* v. *Senior*, 8 M. & W. 834 ; and taking the remarks of the court without reference to the case to which they were applied, they might seem to be somewhat at variance with the decision in *Stackpole* v. *Arnold*. But the case of *Huntington* v. *Knox* was the case of a simple contract in writing, in reference to the sale of goods. The agent of the plaintiff, in making a memorandum of the contract and giving a receipt for money paid on account of the same, had used his own name exclusively ; but his agency being fully proved by

oral evidence, and the interest of the plaintiff shown as the
owner of the article sold, the question was, whether the principal
could maintain an action in his own name ; and the court de-
cided that he could, citing the case of *Higgins* v. *Senior* as a
direct authority, as it was, for the case of *Huntington* v. *Knox ;*
for, like that, it was an action upon a contract not negotiable.
The adoption of the language of the court in the case of *Hig-
gins* v. *Senior*, as sound law, was certainly warranted for the
purposes to which it was applied ; but it ought not to be held as
going further, much less as overruling *Stackpole* v. *Arnold*, with-
out any reference to it, or suggestion of that kind.   It seems to
us that the two cases may well stand together, applying the
law, as stated in each, to its own peculiar facts.

We then recur to the contract in the present case, and find it
to be a negotiable draft, drawn by Joseph Barrell, in his own
name, without any indication that he is not the principal, and
payable to a third person, who indorsed it to the appellants.
There is nothing in the margin or the heading of the draft, that
indicates any other principal than Barrell.   There is no single
circumstance on the face of the paper, which in any way con-
nects Horace Gray or the Pembroke Iron Works with the draft,
unless it be the direction to the drawees, to " charge the same
to the account of Pembroke Iron Works."   It has been argued
that this direction indicates that the Pembroke Iron Works are
the real drawers.   But no such inference can properly be drawn
from that circumstance.   Bills are often drawn by parties on
funds of others distinct from the drawer, but with whom ar-
rangements have been made to discharge such drafts.

It is further urged, on the part of the appellants, that the case
of *Fuller* v. *Hooper*, 3 Gray, 334, furnishes a precedent for
maintaining the present action.   But, in the view we take of
the matter, the cases are widely different.   It is true that in that
case Horace Gray, or the Pompton Iron Works, were not
named on the face of the bill as drawers ; but it was drawn by
" W. Burtt, agent."   But the form of signature indicated that
it was in fact drawn in behalf of some other party; and had
it been in the form of " H. Gray, by W. Burtt, agent," or

" Pompton Iron Works, by W. Burtt, agent," no question could have arisen as to the party liable thereon.   It was not as strong a case as that last supposed; but there was in the margin of the draft, which was apparently a business draft prepared to be used for the  Pompton Iron  Works, " Pompton Iron Works." An agency was thus fully disclosed on the face of the bill, and the only further inquiry was, whether enough appeared to connect that agency with Horace Gray or the Pompton Iron Works. The court were of opinion that it was shown that the signature of Burtt was the signature of an agent; and that the face of the bill indicated who the principal was.

But in the present case the signature is without any indication of agency, and nothing on the draft shows that it was drawn by the Pembroke Iron Works; there is no doubt that Joseph Barrell made himself personally responsible as drawer; and we are of opinion that the form of the signature and the nature of the instrument preclude the appellants, who discounted the bills upon the names borne upon them, being those of Joseph Barrell as drawer, J. D. Andrews as indorser, and Horace Gray & Co. as drawees and acceptors, from resorting to other parties not named thereon as parties.

Nor do the facts present a case sustaining a legal claim against the estate of Horace Gray individually, on account of an original indebtedness independent of that upon the bill itself. It is a case of mere discount of a bill; and that a bill drawn upon a third party, and accepted by that party in favor of a fourth, by whom it was indorsed.   There was no previous loan to Horace Gray, and no ground for setting up a previous indebtedness.   Nor can the appellants maintain their claim upon the ground of an undisclosed principal, the character of the transaction being that of a discount of the paper upon the names borne upon it; and such being the original transaction, the appellants cannot go behind the paper and show that others received the benefit of the money paid for this bill.

*Decree affirmed.*