CASE 12—JUNE 13.

# Kyle vs. Taylor et ux.

APPEAL FROM MERCER CIRCUIT COURT.

Where a married woman, in conjunction with her husband, sues the personal repre-sentative of a testator for a legacy bequeathed to her by the testator, and the will recog-nizes the existence of some right on her part to land devised by him to another, and provides that the legacy shall be diminished to the extent of any interest she may successfully assert to the land, it presents a case for election between the legacy devised and her supposed interest in the land, and she should be privily examined in regard to the election by the chancellor, or a commissionor appointed by him for that purpose, before the personal representative is ordered to pay over the money ; and an election thus made will protect him in its payment.

This action was brought by Taylor and wife against Kyle, ad-ministrator, with the will annexed of Buckner Miller, deceased, to recover two legacies of $500 each, bequeathed by him to Mrs. Taylor, (then Jane B. Miller) his granddaughter. The administrator resisted the recovery mainly upon the ground that Mrs. Taylor was possessed of an interest in the Missouri land mentioned in the opinion, and had not made a convey-ance of her interest therein. Judgment having been rendered against him, he prosecutes this appeal.

The clauses of the will bearing upon the question are as follows: "2. I give and bequeath to my son, Robert B. Miller, three hundred and twenty acres of land in the county of St. Charles, and State of Missouri, which I inherited from my deceased son, John S. Miller. * * * *" "6. I give and bequeath unto my granddaughter, Jane B. Miller, daughter of my son William H. Miller, deceased, the sum of $500, which is to be held by my executors, who are to pay the interest upon the same for her support and education, until she attains the age of twenty-one or marries, when she is to receive her said $500. * * * *" "13. If my son Robert B. should not get the Missouri land by reason of any claim on the part of my other children, or grandchildren, then they are to have as much less of what I have given them as they may get of said land given by me to said Robert, and said Robert is to have the

same." The second clause of the codicil to the will bequeaths to his said granddaughter "the further sum of $500, making her legacy $1,000, with the same limitations and restrictions as specified in the sixth clause of the foregoing will."

JAMES HARLAN for appellant.

A. BARNETT for appellees.

JUDGE STITES DELIVERED THE OPINION OF THE COURT:

The 13th clause of Miller's will manifestly recognizes the existence of some right on the part of his children and grand-children to the land the testator claimed in Missouri, and which he devised to his son Robert; and the provision in that clause which diminishes the sums specifically devised to Mrs. Taylor and her co-devisees, to the extent of the value of any interest they or either of them may successfully assert in the Missouri land, presents a case for election between the sums devised and their supposed interests in the land.

This seems to have been the view of the chancellor below; and the only question, in regard to the election, is, whether it has been made in such manner as will operate to protect the administrator with the will annexed from liability to the dis-tributees of the estate.

The petition to compel the payment of the bequest is in the name of the husband and wife—the latter being the party entitled to the bequest. It shows a state of case which entitles them to relief, provided the wife makes a valid election, and furnishes thereby protection to the administrator with the will annexed.

The answer of the latter admits the marriage of the legatee, but avers that she is still an infant, and insists that a formal release of her interest in the Missouri land is essential to his protection—she being, as is also averred, entitled to an interest therein under the laws of Missouri.

There is no evidence showing either the infancy of Mrs. Taylor, or what the laws of Missouri are, and we need only inquire whether such an election has been made as will justify the payment of the legacy under the will.

The election seems to have been made by the attorney of the husband and wife, under a simple power, signed by the parties, without an examination of the wife by the chancellor, or a commissioner appointed by him for that purpose. And the power itself appears to have been received and acted on without any proof as to its execution.

Courts of equity are and should be specially regardful of the rights of *femes covert*, and all others who are not in a condition to look after and protect their own interests.

It is upon this ground that, where a sum of money is adjudged by the chancellor to be the property of a married woman, he will not allow it to be paid to the husband until after a privy examination of the wife, apart from the husband, whether such payment will meet her approbation, or whether she prefers a settlement of the same upon herself and children. (2 *Story's Equity, sec.* 1418.)

The practice has, therefore, been, where the object of the suit is money belonging to a married woman, and where her presence can be conveniently had, for the court to whom the application is made to take such privy examination when the order for payment is made. If not convenient for her to attend in person, a special commissioner is appointed for the purpose of making the examination, whose action in the premises is reported to the court, and embodied in the order or decree. (*Daniell's Chancery Practice, 1st vol., p.* 116.)

Precautions of this character are required by the Revised Statutes in relation to the sale of the land and slaves of married women; and no good reason is perceived why, in a matter of election affecting the interest of a *feme covert*, she should not be entitled to a like privilege.

It seems to us, therefore, that Mrs. Taylor should in this case have been examined in regard to the election, in the manner indicated, before the appellant was ordered to pay over the money. An election thus made would, we think, afford him protection, and authorize the payment of the bequest by the administrator, he being entitled to the usual refunding bond.

Nor should interest have been adjudged except from the date of the marriage, that being the time designated for the payment of the fund.

VOL. 2—7.

The testator evidently designed the fund to be invested for the use of the legatee, and that interest should be paid as it accrued upon such investment. A reasonable time should be allowed for making the investment; and inasmuch as the marriage occurred within a year after the will was admitted to probate, and it does not appear that any interest had been realized from the fund by the executor, we do not think he was chargeable with interest until after the marriage, when the will directs the money to be paid.

For the reasons indicated the judgment is *reversed*, and cause remanded for a judgment and further proceedings in conformity with this opinion.