JABIN B. WILLIAMS v. PHILEMON F. ROBBINS & another.

A promissory note, in which no principal is mentioned, and signed " A. B., Ag't.," binds A. B. only, and will not support an action against any other person.

A partnership of dealers in furniture in one place owned a manufactory in another, at which the business was conducted by A. B. under the name of " A. B., Ag't." The agent gave a note, so signed, for goods delivered to the workmen there upon his order *Held,* that an action could not be sustained thereon against the partnership by evidence that in a previous instance for a similar claim such a note had been given to the same person, and, not being paid at maturity, had been presented to the partnership, who at first declined to pay or give their own note for it; but, on being asked if they repudiated the agent's transactions, said that they did not, but wished to keep the business at the manufactory separate from their other business, and that he might go to the place where the manufactory was and secure himself there ; but finally gave their note instead of the other, and subsequently paid it; and that on other occasions the partners said that they would settle or be responsible for all claims for anything that went into their business at that place.

ACTION OF CONTRACT by an indorsee upon this promissory note : " $300, Huntington, Mass. 15th July 1858. Four months after date I promise to pay to the order of Bartlett & Williams three hundred dollars, payable at Agawam Bank, Springfield, value received.  A. Copeland, Ag't."

At the trial in the superior court, it appeared that the defendants, as copartners under the name of Robbins & Winship, were dealers in furniture at Hartford in the State of Connecticut; that about the 1st of January 1857 they became the owners of an establishment for the manufacture of bedsteads at Huntington, consisting of a mill or shop, with the machinery, tools, lumber and other property, at which from twelve to twenty workmen were employed, and the business was conducted by Alfred Copeland under the name of " A. Copeland, Ag't."

One of the payees testified " that the consideration of the note was goods delivered by the firm of Bartlett & Williams to the workmen in said manufactory upon the order or authority of said A. Copeland as agent in said establishment; that the account accrued and was settled by said agent, early in 1857, by a note similar to the one in suit, which, not being paid at maturity, was renewed from time to time, it having been understood and agreed between them that the same should be

so renewed and extended, if it should be desired; that the note in suit was the last renewal thereof, and had never been paid; that a previous account due to Bartlett & Williams for goods furnished in the same manner had been settled with them by A. Copeland as agent in February 1857, by a note similar to the one in suit, which was not paid at maturity; that the witness went to Hartford, presented the note to Robbins & Winship and asked them to pay it or give their note for it; that they objected to doing so; that the witness asked them if they repudiated Copeland's transactions; that they replied they did not, but they desired that the Huntington business should take care of itself and pay its own bills, they wished to keep it separate from the business of Robbins & Winship at Hartford, that there was ten thousand dollars' worth of property at Huntington and he might go and secure himself there; that the witness replied that he preferred to have their note, and, if they would give it to him, he would extend it for them, if it should not be convenient for them to pay it at maturity; that they accordingly gave him their note and took up the other, and subsequently paid the note which they so gave him; that after the death of A. Copeland the witness sent to Robbins & Winship by mail a statement of account then due Bartlett & Williams for what had been furnished to A. Copeland, agent, including two or three items of interest or discount for the renewal of the notes, as hereinbefore stated; and that subsequently this account was settled and paid in full by a son of Alfred Copeland, acting as agent or attorney of Robbins & Winship, after the decease of his father." Several witnesses testified to statements of the defendants that they would settle, or were responsible for, all claims for anything that went into their business at Huntington. Upon this testimony, and other evidence not material to the decision, *Rockwell,* J. ruled that the plaintiff could not recover, and directed a verdict for the defendants. The plaintiff alleged exceptions.

*J. Wells,* for the plaintiff, cited some of the cases cited in the opinion, and *Kingman* v. *Kelsie,* 3 Cush. 339; *Woodward* v *Winship,* 12 Pick. 430; *Tappan* v. *Bailey,* 4 Met. 529; *Emer*

son v. *Providence Hat Manuf. Co.*, 12 Mass. 237; *Odiorne* v. *Maxcy*, 15 Mass. 39; *Williams* v. *Mitchell*, 17 Mass. 98; *Thayer* v. *White*, 12 Met. 343; *Kelly* v. *Lindsay*, 7 Gray, 287; *Maneely* v. *M'Gee*, 6 Mass. 143; *Johnson* v. *Johnson*, 11 Mass. 359; *Watkins* v. *Hill*, 8 Pick. 522; *Butts* v. *Dean*, 2 Met. 76; *Reed* v. *Upton*, 10 Pick. 522.

*R. A. Chapman & F. Chamberlin*, for the defendants.

HOAR, J. The most important question which this case presents is whether the note declared on can be considered the contract of the defendants, if it were conceded that Copeland had full authority to make it in their behalf, and that the consideration was exclusively received for their benefit.

The rule is thus stated by Mr. Justice Story: " Where upon the face of the instrument the agent signs his own name only, without referring to any principal, there he will be held personally bound, although he is known to be or avowedly acts as agent." Story on Notes, § 68. But " if it can upon the whole instrument be collected that the true object and intent of it are to bind the principal, and not to bind the agent, courts of justice will adopt that construction of it, however informally it may be expressed." § 69.

No agency is disclosed upon the face of this note, except by the addition of the contracted form of the word " agent " to the signature of the promisor. There is nothing upon the instrument itself to indicate whose agent he was in the transaction, nor what principal, if any, he intended to make responsible.

It was said by this court in the recent case of *Fuller* v. *Hooper*, 3 Gray, 341, that " the rule is general, if not universal, that neither the legal liability of an unnamed principal to be sued, nor his legal right to sue, on a negotiable instrument, can be shown by parol evidence." " In other simple contracts, the rule is different." And there is no adjudged case in this commonwealth, which can be regarded as conflicting with this rule, as applied to negotiable paper. The case of *Stackpole* v. *Arnold*, 11 Mass. 27, was a case in which it was early applied; and that decision has been repeatedly recognized and confirmed in subsequent cases, although the reasoning of the judge who

gave the opinion would lead to the application of the doctrine to contracts not negotiable, which later decisions do not countenance, or even expressly exclude. *Mayhew* v. *Prince*, 11 Mass. 54. *Long* v. *Colburn*, 11 Mass. 97. *Bradlee* v. *Boston Glass Manufactory*, 16 Pick. 350. *Bedford Commercial Ins. Co.* v. *Covell*, 8 Met. 442. *Taber* v. *Cannon*, 8 Met. 460. *Fuller* v. *Hooper*, 3 Gray, 334. *Eastern Railroad* v. *Benedict*, 5 Gray, 565, 566. *Bank of British North America* v. *Hooper*, 5 Gray, 571. *Huntington* v. *Knox*, 7 Cush. 371. *Alden* v. *Pearson*, 3 Gray, 345. *Fiske* v. *Eldridge*, 12 Gray, 474.

That the English courts recognize this distinction between negotiable paper and other simple contracts appears very clearly from the observations of Lord Abinger and Baron Parke in *Beckham* v. *Drake*, 9 M. & W. 92, 96.

The same doctrine is adopted in New York, in a case in which the authorities are extensively reviewed, and in which the signature to the bill was precisely similar to that in the case at bar. *Pentz* v. *Stanton*, 10 Wend. 271. See also *De Witt* v. *Walton*, 5 Seld. 575; *Minard* v. *Mead*, 7 Wend. 68.

In the case of *Northampton Bank* v. *Pepoon*, 11 Mass. 288, the note was indorsed in blank by Simon Larned, attorney; and the court held that he being authorized thus to indorse it, the plaintiff had the right to fill up the indorsement in such a manner as to support the declaration, namely, by an indorsement in the name of the principal, who was the payee of the note.

In *Mann* v. *Chandler*, 9 Mass. 335, *Odiorne* v. *Maxcy*, 13 Mass. 178, *Ballou* v. *Talbot*, 16 Mass. 461, and *Rice* v. *Gove*, 22 Pick. 158, the name of the principal was expressed upon the face of the note.

In *Bradlee* v. *Boston Glass Manufactory*, 16 Pick. 347, and *Packard* v. *Nye*, 2 Met. 47, although in each case the party for whom the notes were given was mentioned in the body of the note, yet as the agents signed their names without any statement that they did it as agents, it was held that they were personally bound, and the principals not responsible.

In *New England Marine Ins. Co.* v. *De Wolf*, 8 Pick. 56, the

action was upon guaranties of two promissory notes. The form of the guaranty of the first was, " By authority from J. D. I hereby guaranty the payment of this note. I. C."; and of the other, " By authority from J. D. in a letter dated," &c. " I hereby guaranty his payment of the premium," &c. " I. C." It was held that J. D. was bound as guarantor of the notes, and not I. C. Chief Justice Parker said : " We are of the opinion that the effect of the guaranty must be determined by the intention with which it was made. If Clap had authority to make the guaranty for the defendant, and the words are such as not clearly to bind himself alone, and it can be ascertained that he intended to act for De Wolf, the latter will be bound." That was a case where the representative capacity appeared in the body of the guaranty, and not by anything appended to the signature ; but a guaranty is not, in Massachusetts, a negotiable contract.

In *Catskill Bank* v. *Hooper*, 5 Gray, 574, the question was raised whether the drawer of a bill, by adding to his signature the words " Superintendent, Saugerties, N. Y.," could be considered as so far indicating on the face of the bill that he was acting in a representative capacity, as to charge the owner of some iron works at Saugerties, of which he had charge, and on account of which the bill was drawn ; but it was not decided.

In *Paige* v. *Stone*, 10 Met. 160, it seems to have been conceded by counsel, and not discussed in the argument, that a note signed " A. F. for the assignees," was sufficiently signed to bind the persons to whom A. F. had assigned his property in trust for his creditors, or such of them as had authorized him to make the note. And Hubbard, J. says, in delivering the opinion of the court: " We think it was properly left to the jury to determine what was meant and understood by the words ' Asa Fessenden for the assignees,' and whether the defendants were the only acting assignees." But the verdict for the plaintiff was set aside upon grounds which made the point immaterial.

The cases of *Savage* v. *Rix*, 9 N. H. 263, and *Newhall* v *Dunlap*, 14 Maine, 180, are in harmony with the general current of the authorities in this commonwealth.

It has been urged on behalf of the plaintiff, that, upon the evidence reported, the name of " A. Copeland, Ag't," might be considered as a name under which the defendants had chosen to transact business, and thus bring the case within the principle of the decision in *Melledge* v. *Boston Iron Co.* 5 Cush. 158 But on examining the evidence we think it falls far short of sustaining this position. The cases in which that doctrine has been applied have been usually cases of corporations or copartnerships, transacting their business under an artificial name, by which they were known and recognized in their dealings. If this name is also that of a natural person, competent to contract and making contracts on his own account, it requires very clear and cogent proof, where an instrument is executed by him in his own name, to show that it was not designed to be his contract.

As we are all of opinion, therefore, that the note declared on is the personal note of Copeland, and not the note of the defendants, it becomes unnecessary to consider the other objections taken to the plaintiff's claim. *Exceptions overruled.*