Pease *v.* Pease.

| 35 | 131 |
| 61 | 49 |
| 35 | 131 |
| 77 | 374 |

## AMOS PEASE *vs.* OMAR PEASE, TRUSTEE.

A Shaker community in this state, by the terms of a covenant signed by its members and by law, transacted business in the name of a trustee appointed by the elders. A negotiable note was given in the state of Massachusetts, for lands bought for the community, signed "Zelotes Terry." Terry was in fact a trustee at the time, and as a member of the community was disqualified from doing any private business. Held, 1. That, regarding the signature as simply that of an agent to a negotiable note, the principals would not be liable under the laws of Massachusetts, by which the case was to be governed. 2. But that the community might have adopted the name of "Zelotes Terry" as their business name, and that evidence was admissible to show that they had done so.

A party can adopt a name, and will be holden by contracts executed in such name, and it makes no difference that the name so assumed is not an artificial one, but the proper name of a living person.

Whether the law of Massachusetts is the same with regard to a note not negotiable : *Quære.*

A non-negotiable instrument, given for land bought for the community, was signed "Zelotes Terry, Trustee." Held that, as the community was authorized to do business in the name of its trustee for the time being, and could sue and be sued in that name, and had no specific corporate name, the name of such trustee, with a term indicating his official character, was properly the corporate name of the community ; and that parol evidence was admissible to show that "Zelotes Terry, Trustee," meant Zelotes Terry, trustee of the community.

ASSUMPSIT, against a Shaker community, known as the East Family of Shakers, upon certain instruments described below, brought to the Superior Court in Tolland County. The defendant upon the record was "Omar Pease, as Trustee of the East Family of Shakers," and it was alleged that he was the successor of Zelotes Terry, late trustee of the community. The declaration contained three special counts, each upon one of the following instruments, and in the order given :

1. "$1500. On demand, for value received, I promise to pay to the order of Lyman Wolcott, fifteen hundred dollars. March 6, 1862. ZELOTES TERRY."

*Endorsed on the back.* "LYMAN WOLCOTT, without recourse."

2. "$400. Springfield, March 31, 1859. For value received, I promise to pay Nathan Daman, or order, four hundred dollars, on demand, with interest annually.

R. M. ABBE."

*Endorsed on the back.* "I guarantee the payment of this note, waiving notice and demand. ZELOTES TERRY, Trustee."

3. "$1300. For value received, we promise to pay Lyman Wolcott or order, thirteen hundred dollars, as follows : four hundred dollars in one year from date ; four hundred and fifty dollars in two years from date, and four hundred and fifty dollars in three years from date, with interest annually. Springfield, Feb. 16, 1861. SYLVIA B. WOOD.

CHARLES B. WOOD."

*Endorsed on the back.* "I guarantee the payment of this

note to Lyman Wolcott, or order, waiving notice and de-
mand.                            ZELOTES TERRY, Trustee."

"LYMAN WOLCOTT, without recourse."


The above note and guaranties were averred to have been
executed by the said Zelotes Terry, while he was the trustee
of the community and in his capacity as such, and for the
consideration of certain lands purchased by him as such trus-
tee for the benefit of the community, and which were con-
veyed to him as such trustee.

By statute, (Gen. Statutes, title 7, secs. 229, 230, 231,) all
conveyances taken by the Shaker communities may be taken
in the names of their trustees for the time being, and all suits
may be brought by or against the communities under the name
of such trustees, and they have no other corporate character
or name.

The case was tried to the jury, upon the general issue, with
notice, before *Sanford, J.*

On the trial the plaintiff offered evidence to prove, and
claimed that he had proved, that each of the two notes de-
scribed in the second and third counts in the declaration, on
the 1st day of March, 1862, were the property of Zelotes
Terry, as trustee of the East family of Shakers, as described
in those counts ; and that the note described in the first count
made by Zelotes Terry, and the guaranties upon the notes de-
scribed in the second and third counts, signed by Zelotes Ter-
ry, Trustee, were part and parcel of one transaction; and that
said notes and guaranties were delivered by said Zelotes Ter-
ry, Trustee, to one Lyman Wolcott, on the 6th day of March,
1862, at Springfield, Massachusetts, in part payment for a
tract of land situated in Springfield, that day sold and con-
veyed by deed by Wolcott to Zelotes Terry, Trustee of the
East family of Shakers mentioned in the declaration, and for
the use and benefit of said East family of Shakers.

The plaintiff further offered evidence to prove, and claimed
that he had proved, that the community of Shakers, located
in Enfield in this state, consists of four separate families, as

follows : the Church family, established in 1792 ; the North family, established in 1794 ; the South family, established in 1795 ; and the East family, established in 1796 ; that according to the forms and usages of said community the property and affairs of each family are kept separate, and managed by trustees appointed or chosen for the several families as independent communities ; that from the year 1796, the property and affairs of said East family were so kept separate and managed by trustees of that family until the year 1812, when said family became united with the North family, and their property and affairs were thereafter managed by the trustee of the North family, until the 28th of April, 1853, when said East family ceased to be connected with the North family in temporal affairs, and the said Zelotes Terry was appointed trustee of said East family ; that from and after the 28th day of April, 1853, until after the making and delivery of the notes and guaranties described in the declaration, all the property, affairs and business of said East family were kept and managed by said Zelotes Terry, their trustee, as an independent community ; that between the 28th day of April, 1853, and the 6th day of March, 1862, the said Zelotes Terry had transacted all the pecuniary affairs of said East family, had purchased and sold real estate in this state and in Massachusetts, had borrowed and loaned money, had given and received notes, and had taken and assigned mortgages, all which had been done by him in his capacity of trustee ; and that he had no private property, and that all his pecuniary transactions were for the use and benefit of said East family of Shakers.    And the plaintiff offered evidence to prove, and claimed that he had proved, that if said Terry had not received said appointment of trustee strictly according to the rules of the order to which · he belonged, yet he had been and was permitted by said East family and the entire community of Shakers to hold himself out to the world as the trustee of said East family, with full power to transact all their business of a worldly character ; and that he did so hold himself out to the world, and was re-

garded and recognized as such trustee by all parties interested.

In connection with the note marked 1, offered by the plaintiff under the first count in the declaration, the plaintiff offered evidence to prove, and claimed that he had proved, that the note was one of several notes given or assigned at the same time by said Terry to said Wolcott, in payment for said land so conveyed to said Terry; that all the other notes and assignments and guaranties were signed by said Terry with the addition of the word "trustee;" that it was the intention of all the parties that this note should have been signed "Zelotes Terry, Trustee," and that the word trustee was omitted by oversight and accident; that said Terry was acting in his said capacity as trustee; and that the deed from Wolcott to him for which said note was given, was given to said Zelotes Terry as trustee; and that the land so purchased had ever since been holden and occupied by the trustees of said East family for their use and benefit. And the plaintiff further offered evidence to prove, and claimed to have proved, that according to the forms and usages of said community of Shakers, the trustees of said community were accustomed to sign contracts and other writings executed by such trustees on behalf of such communities, sometimes by their own names alone, and sometimes with the addition of the word trustee.

The defendants offered evidence to prove, and claimed that they had proved, that said Zelotes Terry never was appointed trustee as claimed by the plaintiff, and that he had never been permitted or suffered to hold himself out to the world as such trustee; and that prior to the 6th of March, 1862, said Terry had never acted as such trustee with the knowledge or assent of the defendants, or of any of the officers or members of said community of Shakers; and that if, on the 6th of March, 1862, the said Terry undertook or assumed to purchase said lands, or execute said notes and guaranties as such trustee, his acts were wholly unauthorized by the defendants, and had never been adopted or ratified by them.

The defendants offered in evidence a document, known among the community as a Covenant, which it was claimed

was signed by all the covenant members of the North and East families, with evidence that under this covenant the defendants were organized as a community and their business carried on. The parts of it bearing upon questions involved in the case, were as follows :

"ARTICLE III.  OF THE TRUSTEES.

SECTION 1.—*Appointment, Qualifications and Powers of the Trustees.* It has been found necessary for the establishment of order in the society, in its various branches, that superintending deacons and deaconesses should be appointed and authorized to act as trustees or agents of the temporalities of the Church. They must be recommended by their honesty and integrity, their fidelity in trust, and their capacity for the transaction of business. Of those qualifications the Ministry and Elders must be the judges.  The official trustees of the Church are generally known among us by the title of Office Deacons, of which there must be two or more ; and being appointed by the authority aforesaid, they are invested with power to take the general charge and oversight of all the property, estate and interest dedicated, devoted, consecrated and given up for the benefit of the Church ; to hold in trust the fee of all the lands belonging to the Church ; also all gifts, grants and donations which have been or may hereafter be dedicated, devoted, consecrated and given up as aforesaid ; and the said property, estate, interest, gifts, grants and donations, shall constitute the united and consecrated interest of the Church, and shall be held in trust by the said deacons, as acting trustees, in their official capacity, and by their successors in said office and trust forever.

" SECTION 2.—*Duties of the Trustees.* It is, and shall be the duty of the said deacons or acting trustees, to improve, use and appropriate the said united interest for the benefit of the Church, in all its departments, and for such other religious and charitable purposes as the gospel may require ; and also to make all just and equitable defense in law, for the protection and security of the consecrated and united interest, rights and privileges of the Church and Society, jointly and severally,

as an associated community, so far as circumstances and the nature of the case may require. Provided nevertheless, that all the transactions of the said deacons or acting trustees, in the use, management, protection, defence and disposal of the aforesaid interest, shall be for the benefit and privilege, and in behalf of the Church or Society, as aforesaid; and not for any private interest, object or purpose whatever.

" SECTION 3.—*Trustees to give Information and be Responsible to the Ministry and Elders.* It shall also be the duty of the trustees to give information to the Ministry and Elders of the Church, of the general state of the temporal concerns of the Church and Society committed to their charge; and also to report to said authority all losses sustained in the united interest thereof, which shall come under their cognizance. And no disposal of any of the real estate of the Church, nor any important contract, shall be considered valid without the previous approbation of the authority aforesaid, to whom the said deacons and trustees are, and shall, at all times, be held responsible in all their transactions.

" SECTION 4.—*Books of Account and Record to be kept.* It is, and shall be the duty of the deacons or acting trustees to keep, or cause to be kept, regular books of account, in which shall be entered the debit and credit accounts of all mercantile operations and business transactions between the Church and others, all receipts and expenditures, bonds, notes and bills of account, and all other matters that concern the united interest of the Church : And also a book or books of record, in which shall be recorded a true and correct copy of this Covenant, also all appointments, removals and changes in office of ministers, elders, deacons and trustees ; all admissions, removals, departures and decease of members; together with all other matters and transactions of a public nature, which are necessary to be recorded for the benefit of the Church, and for the preservation and security of the documents, papers and written instruments pertaining to the united interest and concerns of the Church committed to their charge. And the said records shall be annually inspected by the lead-

ing authority of the Church, who, together with the trustees, shall be the official auditors of the same ; and the signature of one or more of said auditors, with the date of inspection and approval, shall be deemed sufficient authority for the correctness and validity of the facts and matter so recorded.·

"Section 5.—*Trustees to execute a Declaration of Trust.* For the better security of the united and consecrated interest of the Church to the proper uses and purposes stipulated in this Covenant, it shall be the duty of the trustee or trustees who may be vested with the lawful title or claim to the real estate of the Church, to make and execute a declaration of trust, in due form of law, embracing all and singular, the lands, tenements and hereditaments, with every matter of interest pertaining to the Church which, at the time being, may be vested in him or them, or that may in future come under his or their charge of office, during his or their trusteeship.

"Section 6.—*Vacancies in certain cases, how supplied.* We further covenant and agree, that in case it should at any time happen in the course of Divine Providence, that the office of trustee should become wholly vacant by the death or defection of the trustee, or all the trustees, in whom may be vested the fee of the lands or real estate belonging to the said Church or Society, then, and in that case, one or more successors shall be appointed by the constitutional authority recognized in this Covenant, according to the rules and regulations prescribed by the same ; and the said appointment being duly recorded in the book of records provided for in this article, shall be deemed, and is hereby declared, to vest in such successor or successors, all the rights, interest and authority of their predecessors, in respect to all such lands, property and estate belonging to the Church or Society as aforesaid."

Article 5th of the covenant provided for the appointment of family deacons and deaconesses by the ministry and elders, who should have the care of the domestic concerns of their respective families, but who were not to buy and sell, or in any way dispose of the property under their care, except with the approbation of the trustees.

Article 7th provided that all the members should subscribe the covenant, and should thereby give up all private interest of every kind, and consecrate themselves wholly, with all their temporal interests, to the service of God and to the support and benefit of the church and the community, and to other pious and charitable purposes, under the direction of the elders, deacons, and trustees.

The defendants, having offered this covenant in evidence, then offered evidence to prove, and claimed that they had proved, that the said Terry had never been appointed by the ministry and elders as a trustee, nor were the ministry or elders consulted as to the purchase of the land of Wolcott, or the giving of the note or guaranties described in the declaration. They also offered evidence to prove, and claimed that they had proved, that Wolcott induced said Terry to purchase said land, and execute the note and guaranties described in the declaration, by false and fraudulent representations ; and that said Terry afterwards repudiated the contract on the ground of such frand, and offered to re-convey the land to Wolcott, and demanded a return of the notes, which was refused by Wolcott.

All the evidence offered on both sides was received subject to such objections as might be made in the argument, to be disposed of by the judge in his charge to the jury.

The various decisions of the Supreme Court of Massachusetts applicable to the case were agreed to be considered as in evidence ; and the defendants claimed that by the law of Massachusetts the note and guaranties were the personal contracts of Zelotes Terry, and not the contracts of the community, and that by the law of Massachusetts a guaranty is not a negotiable contract.

There was some evidence tending to show that the indorsement of the words " Lyman Wolcott, without recourse," on the back of the note numbered 3, were written at the time of a former transfer of the note from Wolcott to Terry, and before the guarantee thereon, which was written on the 6th of March, 1862, when the note was re-transferred from Terry to

Wolcott; and that the note passed from Wolcott to the plaintiff without any further indorsement by Wolcott.

It was also admitted that the guaranties on both the notes numbered 2 and 3, together with the word "trustee" on each of them, were written by E. D. Beach, Esq., at the request of Terry and in his presence, and the name of Zelotes Terry only was in the handwriting of Terry.

There was also some evidence tending to prove that Terry purchased the real estate in Springfield to cut up into building lots and for purposes of speculation, but for the use and benefit of said East family of Shakers.

In the argument the defendants objected to the admission of the note numbered 1 in evidence under the first count, on the ground of variance, and also on the ground that on its face it purported to be the personal note of Zelotes Terry, and not the note of Zelotes Terry, trustee ; and they also objected to the admission of parol evidence to show that the note was executed and was intended to be executed by Terry in the capacity of trustee.

The court sustained said objections and withdrew said note from the consideration of the jury.   To which ruling the plaintiff excepted.

As to the second and third counts the defendants requested the court to charge the jury as follows :

1. It being an undisputed fact in the case that the notes, contracts and guaranties were all made and executed in Massachusetts, they are to be governed by the law of Massachusetts as regards their construction and validity.

2. Unless the jury believe that Zelotes Terry was appointed a trustee by the ministry and elders, the plaintiff cannot recover in this action, even if the jury should find that he did the general business of a trustee.

3. Proof of a mere appointment of Zelotes Terry to take charge of the domestic affairs of the East family of Shakers, and to buy and sell under authority of the trustees and elders such things as were necessary in the proper care and management of the family and lands under his care, is not enough to charge the defendants in this action, unless it is also proved

that he was appointed a trustee with full authority to hold in his own name as trustee the title to real estate and other property of the community, and to buy other real estate if he saw fit.

4. That all the evidence of the acts, conduct and declarations of Terry on which the plaintiff relies to prove him a trustee, is immaterial, except so far as it tends to prove an appointment as trustee by the constituted authorities of the community.

5. That there is no evidence in the case from which the jury can properly find that Zelotes Terry had authority to purchase the real estate in Springfield, and bind the community by notes or promises to pay therefor.

6. That under the covenant of the community and the evidence in the case, if the jury believe that Terry was a regularly appointed trustee, and that there was at the time of this transaction one or more other trustees of the East family, they cannot find that he had authority to buy real estate, and bind the community by notes given therefor, without joining another trustee with him.

7. If the jury believe that Terry was trustee, and purchased the real estate in Springfield to cut up into building lots, or for purposes of speculation, it was not an act within the scope of his authority under the covenant, and would not be binding upon the community.

8. That even if Terry had been a regularly appointed trustee, he would not thereby have authority, after signing the guaranties in his own name, to direct another person to add the word trustee to his signature, and such words so added do not bind the defendants in this action.

9. That there is no evidence in the case tending to show that at the time of or before Terry purchased the real estate and executed and delivered the notes and guaranties, he consulted the ministry and elders about the contract, and therefore the plaintiff cannot recover.

10. Then even if the jury believe that Terry was a regularly appointed trustee, the plaintiff cannot maintain this action if the jury also believe that Terry purchased the real es-

tate of Wolcott and executed and delivered the papers without first consulting the ministry and elders about it.

11. The plaintiff cannot recover upon the second count of his declaration, because the note proved in evidence in support of that count is negotiable, and has never been duly indorsed or negotiated.

12. That by the law of Massachusetts the contract of guaranty upon the note declared on in the second count is the personal contract of Zelotes Terry, and not the contract of the community.

13. That parol evidence is not competent to charge the defendants in this action upon this note or the guaranty thereon.

14. That by the law of Massachusetts the contract of guaranty upon the note declared on in the third count, is the personal contract of Zelotes Terry, and not the contract of the community.

15. That parol evidence is not competent to charge the defendants in this action upon this note or the guaranty thereon.

16. If the jury believe that the words "Lyman Wolcott, without recourse," were upon the note declared on in the third count of the declaration before Terry transferred it to Wolcott, and that it passed to the plaintiff in this action without further indorsement by Wolcott, then said guaranty was never duly indorsed to the plaintiff as required by the law of Massachusetts, and he cannot recover thereon in this action.

17. If the jury believe that Terry was induced to purchase the land and execute the papers in suit by fraudulent acts or representations of Wolcott or of any person acting for him, then the plaintiff cannot recover.

As to the first of the foregoing requests of the defendants, the court charged the jury as asked, adding that so far as enforcing the remedy or rights of the plaintiff is concerned, the form, time and manner of the remedy is to be determined by the law of the forum, or the place where the right is sought to be enforced.

The request numbered seventeenth was given by the court, with this addition, "provided such fraud is *proved* as will make the contract void, for it is well established law that fraud avoids all contracts, and whenever the party who has obtained a contract by fraud brings an action to enforce it, it is competent for the other party to show the fraud and avoid the action, but the fraud must be proved and not presumed. And so far as this case is concerned, it is conceded that if these obligations were tainted with fraud, the plaintiff took them subject to whatever infirmities attached to them before they came into his hands."

As to the other requests from the second to the sixteenth inclusive, the court did not charge the jury in words as requested, but after fully setting forth the several claims of the plaintiff and defendants, especially upon the question of trusteeship, did charge the jury as follows :

"This question of trusteeship is submitted to you as one of fact, for you to determine upon the evidence presented to you. It is a material fact of the plaintiff's case which he is bound to prove ; and if you find that no such trusteeship existed, or that the acts of Zelotes Terry were in no manner ratified and sanctioned by this community of Shakers, then these guarantees were void as against the defendants, and the plaintiff acquired no rights under them by virtue of the assignment to him which he can enforce against the defendants. If, on the other hand, you are satisfied from the evidence that the trusteeship of Terry is established, or that his acts, while acting as such, were recognized, sanctioned and ratified by this community of Shakers, then your verdict should be for the plaintiff for the amount of the notes described in the second and third counts, with interest on the same." The court further charged the jury, in substance, as to the second and third counts, that the plaintiff could recover thereon, notwithstanding the defendants' objection to the form of the notes and guarantees, provided they should find for the plaintiff upon the other material points of the case.

In reference to the note referred to in the first count, the court instructed the jury that this count charged the defend-

ants with liability upon the same grounds as the other counts of the declaration, namely, that the note was executed by Terry in his capacity as Trustee, and that the note did not sustain the allegations ; that it was executed by Zelotes Terry, and not by Zelotes Terry, trustee ; that parol evidence was not admissible to show that the note thus executed was intended to have been executed in some other way ; and that if the contract was not executed as it was intended that it should have been, it should be reformed by proceedings in equity, before a suit could be maintained upon it against these defendants.

The jury returned a verdict in favor of the plaintiff upon the second and third counts, and for the defendants on the first count.

The plaintiff, being aggrieved by the decision of the court in withdrawing from the consideration of the jury the note offered under the first count in the declaration, in connection with the parol evidence offered, moved for a new trial. And the defendants, being aggrieved by the rulings of the court as to the second and third counts in the declaration, also moved for a new trial.

*Hyde* and *Robinson*, for the plaintiff.

*T. C. Perkins*, and *M. P. Knowlton* of Massachusetts, for the defendants.

Loomis, J.*   The declaration in this case contains three special counts in assumpsit.

In the first count the plaintiff, as indorsee, seeks to recover of the defendants, as makers, upon a promissory note in the following form :—

"$1500.   On demand, for value received, I promise to pay to the order of Lyman Wolcott, fifteen hundred dollars.
March 6, 1862.                           ZELOTES TERRY."

*Endorsed on the back.*   "LYMAN WOLCOTT, without recourse."

* See note, ante, page 131.

The second count is upon a guaranty by the defendants for the payment of a promissory note as follows :—

"$400.   Springfield, March 31st, 1859.   For value received I promise to pay Nathan Daman, or order, four hundred dollars, on demand, with interest annually.

R. M. ABBE."

*Endorsed on the back.*   "I guarantee the payment of this note, waiving notice and demand.   ZELOTES TERRY, Trustee."

The third count is upon a guaranty of another note as follows :—

"$1300.   For value received, we promise to pay Lyman Wolcott, or order, thirteen hundred dollars, as follows : four hundred dollars in one year from date ; four hundred and fifty dollars in two years from date, and four hundred and fifty dollars in three years from date, with interest annually.

Springfield, Feb. 16, 1861.           SYLVIA B. WOOD.
                                      CHARLES B. WOOD.

*Endorsed on the back.*   "I guarantee the payment of this note to Lyman Wolcott, or order, waiving notice and demand.

ZELOTES TERRY, Trustee."

"LYMAN WOLCOTT, without recourse."

Said notes and guaranties were executed in the state of Massachusetts.   The evidence offered to support the first count was rejected by the Superior Court, and the jury returned a verdict for the plaintiff upon the second and third counts only. Both parties now ask for a new trial ; the plaintiff, on account of the rejection of said evidence ; and the defendant, on account of the rulings of the court upon the questions arising under the second and third counts.

The first question is, whether the court erred in rejecting the evidence offered by the plaintiff under the first count of the declaration.

In connection with the introduction of said first described note, the plaintiff offered evidence to prove that Zelotes Terry, when he signed said note, and long before that time, was a

duly appointed trustee for the East family of Shakers, located in Enfield in this state; that in giving and executing said note he acted as trustee for said community of Shakers; that said note was given in part payment for land deeded to said Terry as trustee; and that the land so conveyed has ever since been held and occupied by the trustees, for the use and benefit of said East family of Shakers; and that according to the forms and usages of said community, the trustees thereof were accustomed to sign contracts and other writings, executed by such trustees on behalf of said community, sometimes by their own names alone, and sometimes with the addition of the word "Trustee."

The objections to this evidence which prevailed in the court below, were, that there was a variance between the declaration and the proof thus offered; that the note on its face was the personal contract of Zelotes Terry, and not of Zelotes Terry, Trustee; and that parol evidence was not admissible to show that the note was executed as the note of Zelotes Terry, Trustee.

The declaration alleges:—"that on the 6th day of March, 1862, Zelotes Terry was trustee, for the time being, of the East family of Shakers, the community aforesaid; that on the 6th day of March, 1862, the said community, by the said Zelotes Terry, acting in his said capacity as trustee aforesaid, made a certain promissory note in writing, bearing date the said 6th day of March, 1862, and duly signed by the said Zelotes Terry, who then was trustee as aforesaid, and acting in said capacity, and thereby promised," &c. The evidence offered accords perfectly with the allegations in the declaration, and therefore the objection upon the ground of variance merely cannot prevail. The real question is, whether the declaration can be proved by parol evidence. Can a note, signed "Zelotes Terry," be proved by parol to be the note of "Zelotes Terry, Trustee for the East family of Shakers?"

We will first consider the subject upon the principles of agency. We have a negotiable note, signed by the agent in his own name, without disclosing his agency or naming his principal in any manner; and the question is, can such a con-

tract be enforced against the principal when subsequently discovered ?

As this question goes to the *right* of the party, and not to the *remedy* or judicial proceeding, and involves the nature, obligation and construction of the contract, we must resort to the lex loci for its solution. And by the law of Massachusetts it is well settled that if a negotiable instrument is executed by an agent in his own name alone, though in behalf of an undisclosed principal, it cannot be enforced against the latter ; because each party who takes a negotiable note, makes a contract with the parties whose names appear on the face of the instrument, and with no other persons.

So that all evidence, dehors the instrument, upon the question of agency, is to be excluded. *Stackpole* v. *Arnold,* 11 Mass., 27 ; *Bradlee* v. *Boston Glass Manufactory,* 16 Pick., 347 ; *Packard* v. *Nye,* 2 Met., 47 ; *The Bedford Commercial Ins. Co.* v. *Covell,* 8 id., 442 ; *Taber* v. *Cannon,* id., 460 ; *Fuller* v. *Hooper,* 3 Gray, 334 ; *Eastern Railroad Co.* v. *Benedict,* 5 id., 565 ; *Bank of British North America* v. *Hooper,* id., 567 ; *Fiske* v. *Eldridge,* 12 id., 474 ; *Williams* v. *Robbins,* (case not yet reported—opinion by Hoar, J.)

If, therefore, this case were to be determined upon the principles of agency alone, the conclusion of the court would be correct.

But the record suggests another question, namely : Ought not the court to have allowed the evidence concerning this note to go to the jury as tending to show that Zelotes Terry was the business name of the defendants, by which they executed the note in question ? If there was any legitimate evidence bearing on this point it should have gone to the jury, because the law is well settled, by decisions in Massachusetts and elsewhere, that a man may make the name and signature of another virtually his own, by using or allowing it to be used as such in the course of his business. *Fuller* v. *Hooper,* 3 Gray, 334 ; *Bryant* v. *Eastman,* 7 Cush., 111 ; *Melledge* v. *Boston Iron Co.,* 5 id., 158 ; *Medway Cotton Manufactory* v. *Adams,* 10 Mass., 360 ; *Commercial Bank* v. *French,* 21 Pick.,

486 ; *Lindus* v. *Bradwell*, 5 Com. Bench, 583 ; *Bank of Cape Fear* v. *Wright*, 3 Jones (Law,) 376.

The question is not whether the evidence was sufficient to have justified a verdict for the plaintiff, but whether there was any pertinent evidence improperly rejected. The weight of the testimony would doubtless be impaired by the fact that the business name (if any) here employed, was not a purely artificial one, as is usual in such cases, but the name of a natural person, who, in the eye of the law, was competent to contract on his own account. But in principle there is no difference between assuming a purely artificial name, by which to transact business, and assuming the proper name of some other natural person ; only this, that in the latter case the proof ought to be very clear to show that the contract was not designed to be the personal contract of such natural person.

Evidence was offered to show that according to the forms and usages of the community of Shakers the trustees were accustomed to sign contracts and other writings, executed by them on behalf of the community, sometimes by their own names alone, and sometimes with the addition of the word trustee. And in connection with this evidence it was shown that the community adopted this particular act of Terry, by retaining and enjoying the consideration of the note. And to rebut the presumption that the note in question was the personal note of Terry, there was the evidence furnished by the Shaker covenant to show that Zelotes Terry, as a member of the community, could not and did not own any worldly property, and that he could make no contract except in behalf of the community ; and that under the covenant, there could be no such person, known to the business world, as Zelotes Terry, individually. The evidence (had it been received) might also have been strengthened somewhat, by a consideration of the peculiar legal character of the defendants.

The statute (Gen. Statutes, p. 138,) allows the community to appear in court, either to sue or defend, only in the name of the natural person who is trustee for the time being. Therefore the name " Zelotes Terry" (if he was in fact trus-

tee,) was an essential part of the legal or corporate name of the defendants ; and its use in this instance would not carry with it so strong a presumption that it was the individual transaction of Terry, as it would under other circumstances.

Our conclusion therefore is, that the court erred in rejecting the evidence referred to, and that the plaintiff is entitled to a new trial. This would open the whole case, and give the defendants also the benefit of another trial. But it may be important, with a view to another trial, to settle some of the questions which the defendants' motion presents.

The defendants ask for a new trial on account of erroneous instructions to the jury ; and the question is, were the instructions " correct, adapted to the issue, and sufficient for the guidance of the jury in the case before them ?" *Waters* v. *Bristol*, 26 Conn., 398. The defendants made seventeen specific requests, relative to the instructions to be given to the jury. Of these requests the first, (which relates to the law by which the contracts in question were to be construed, and their validity determined,) and the seventeenth, (relative to fraud,) were substantially complied with in the charge as given. The other requests, from the second to the sixteenth inclusive, comprise three points, viz :—

1. The law relative to the trusteeship.
2. That relative to ratification by the Shaker community.
3. That relative to the notes and guaranties in suit.

First. In relation to the trusteeship there were no instructions, except that the jury were to find whether it existed or not. It was assumed to be a pure question of fact, and not a mixed question of law and fact. No reference was made to the number of trustees required by the covenant, nor to the mode of appointment, extent of authority, or to any of the circumstances necessary to constitute a legal trustee. Some instructions were called for on these points, both by the nature of the case, and in consequence of claims made by the defendants at the trial.

The defendants made the distinct claim, founded on the covenant, which was in evidence, that the trustees could only

be appointed by the ministry and elders, and that no such appointment had been made in the case of Zelotes Terry; that even if the jury should find that Terry was a regularly appointed trustee, and there were at the time one or more other trustees of the East family, it would require a majority of the trustees concurring to bind the community; that as the covenant provided for the appointment of deacons or trustees of more limited authority, to take charge of the domestic affairs of the community, the instructions ought to have been such as to enable the jury to distinguish between such limited authority and the more general and important authority to buy and hold real estate. The covenant also required the trustees to consult the ministry and elders on important matters, and as the defendants offered evidence to show that they were not consulted as to the acts in question, and made a specific request relative to this point, the instructions ought to have been such that the jury could judge whether or not there was any limitation on the authority of Terry to bind the community, so far as the case depended upon previous authority.

Second. The instructions relative to the law of ratification by the Shaker community were such as might have induced in the minds of the jury the erroneous belief that a general recognition of Terry's acts as trustee, though in matters pertaining to the domestic affairs of the community, might be sufficient, or that "any manner" of ratification was sufficient; when the ground of ratification ought to have been confined to the particular acts in question, or at least to similar acts.

Third. The remaining requests, as already stated, raise certain questions of law, relative to the notes and guaranties in the second and third counts: viz: Does the law of Massachusetts govern the the construction of these guaranties, signed Zelotes Terry, Trustee, and if so, are they the personal contracts of Zelotes Terry alone, so that all parol evidence is inadmissible to charge the defendants?

That the law of Massachusetts must govern the case has already appeared. And by that law, if the instrument is a negotiable one, and the name of the principal does not appear

upon it, it is held to be the contract of the signer alone, though he adds to his name the word "trustee" or "agent."

The guaranty in the third count mentioned, being written on the back of a negotiable note, and being for the payment of the note to Lyman Wolcott or order, is clearly a negotiable instrument, and as such is governed by the rule just stated. This guaranty therefore became the personal contract of Zelotes Terry, unless "Zelotes Terry, Trustee," was either the corporate or the business name of the defendants, which might be shown by parol evidence. But the name of the defendants was in dispute, and the jury might find that the name signed to the guaranty was not the name of the defendants; which would leave the case to rest entirely upon the principles of agency. The defendants therefore were entitled to the benefit of their claim, that it was a mere case of agency; and that if the jury found as claimed by them, the law was so that the plaintiff could not recover.

The charge of the court was silent with respect to the construction of the contract by the law of Massachusetts; or if the charge as given covered this subject:—"that the plaintiff could recover on the second and third counts, notwithstanding the defendants' objection to the form of the notes and guaranties," then it amounted to a denial of the defendants' claim on this point; and in either case the defendants are justly aggrieved. We think the court ought to have instructed the jury, not only that the law of Massachusetts governed the case, but particularly what the law was as applicable to the facts in issue. *Hale* v. *New Jersey Steam Navigation Co.*, 15 Conn., 539; *Lockwood* v. *Crawford*, 18 id., 361.

The guaranty in the second count, signed "Zelotes Terry, Trustee," not being negotiable, raises the question whether, by the law of Massachusetts, parol evidence is admissible to charge the defendants as principals, upon an instrument not negotiable, upon the face of which the defendants are not mentioned?

There is no difficulty, as we have already seen, in admitting parol evidence to show that "Zelotes Terry, Trustee," was the

legal or the business name by which the defendants executed the guaranty. But considering the case upon the principles of agency merely, we find the authorities in Massachusetts leave the law upon this subject in doubt as to written instruments not negotiable.

One of the leading cases in Massachusetts upon this subject is that of *Stackpole* v. *Arnold*, 11 Mass., 27. This was an action upon a negotiable note, signed by the agent alone in his own name, without any addition or indication on the face of it that he acted in behalf of the principal, who was defendant in the case; but Parker, J., in giving the opinion of the court, makes no mention of the negotiable character of the note, but reasons in general terms applicable to all written contracts, not negotiable as well as negotiable, stating the rule as follows : "No person in making a contract is considered to be the agent of another unless he stipulates for his principal by name, stating his agency in the instrument which he signs."

On the contrary, in *Huntington* v. *Knox*, 7 Cush., 371, Shaw, C. J., seems to state an opposite doctrine in terms equally broad and positive, viz: "Where a contract is made for the benefit of one not named, though in writing, the latter may sue on the contract, jointly with others or alone, according to the interest. The rights and liabilities of a principal upon a written instrument executed by his agent do not depend upon the fact of the agency appearing on the instrument itself, but upon the facts—first, that the act is done in the exercise, and second, within the limits, of the powers delegated ; and these are necessarily inquirable into by evidence." The reasoning in the latter case is apparently irreconcileable with that in the former case, sufficiently so to overrule it; but Chief Justice Shaw in giving the above opinion did not refer at all to *Stackpole* v. *Arnold*, and the courts of Massachusetts have never considered the latter case overruled ; but the later decisions limit and restrain the reasoning in each to the particular facts of the case ; in *Stackpole* v. *Arnold* to the negotiable character of the instrument; in *Huntington* v. *Knox* to the fact that it was an action to recover the price of certain bark sold and

delivered to the defendant, upon a writing by which one Geo. H. Huntington acknowledged to have received of the defendant a partial payment of $25, and in consideration thereof agreed to deliver to the defendant the bark in question, at a certain time and place, and for a specified price. The action was brought for the price of the bark, and was not directly upon the written contract.

In the case of *The Eastern Railroad Co.* v. *Benedict,* 5 Gray, 561, the action was upon the following written order: "Please give Mr. D. A. Neal, president of the Eastern Railroad Co., stock in the Salem Gas Co., at par, to the amount of $7,000. Leonard Fuller." This suit was sustained in favor of the Eastern Railroad Company, upon parol evidence that the order was in fact for the benefit of the company. Dewey, J., in giving the opinion says: "We may assume it to be quite clear, and well supported by authority, that in the case of oral contracts the principal may sue in his own name upon a contract made with his agent. It is equally well settled that the same rule applies to sales by written bills or other memoranda made by the agent using his own name and disclosing no principal;" and after citing authorities, adds: "It is unnecessary in the present case to decide whether upon a mere naked written promise made with one person without any reference in the instrument to an agency, the action upon proof of such agency in fact might be maintained in the name of the principal."

In the case of *Fuller* v. *Hooper,* 3 Gray, 334, Metcalf, J., says: "The rule is general, if not universal, that neither the legal liability of an unnamed principal to be sued, nor his legal right to sue, on a negotiable instrument, can be shown by parol evidence. In other simple contracts the rule is different."

In *Williams* v. *Robbins,* a recent case not yet reported, Hoar, J., in giving the opinion, after referring to the case of *Stackpole* v. *Arnold,* 11 Mass., 27, in its application to negotiable paper, says: "That decision has been repeatedly recognized and confirmed in subsequent cases, although the reasoning of the judge who gave the opinion would lead to the application

of the doctrine to contracts not negotiable, which later deci
sions do not countenance or even expressly exclude."

In *Page* v. *Stone*, 10 Met., 160, it seems to have been con
ceded by counsel, and not discussed in the argument, that a
note signed "A. F., for the assignees," was sufficiently signed
to bind the persons to whom A. F. had assigned his property
in trust for his creditors, or such of them as had authorized
him to make the note.   And Hubbard, J., in giving the opin-
ion, says:  "We think it was properly left to the jury to de
termine what was meant and understood by the words 'A. F.,
for the assignees.'"

Our examination of the cases cited, and other authorities
in Massachusetts, leads to this conclusion, that if we are to
consider the words "Zelotes Terry, Trustee," as the name
merely of the agent of the defendants, there is no decision in
that state which covers this case.   The authorities generally
recognize an important distinction between negotiable and
non-negotiable instruments, as to the admissibility of parol
evidence to charge an unnamed principal; but in the case of
express written contracts, where the action is founded directly
upon the written contract, there is still a doubt to what extent
they will go in admitting such evidence.   We observe a tend
ency in the reasoning of the judges to place their decisions on
the same ground as the English judges do, and we regard the
decisions in England upon this subject as broad enough to
cover such a case as this.   *Sims* v. *Bond*, 5 Barn. & Adol.,
393; S. C., 2 Nev. & Man., 616; *Beckham* v. *Drake*, 9 Mees.
& Wels., 79.

But we are not prepared to declare, as the law of Massa-
chusetts, that which her own courts have hesitated to an-
nounce; and we think the case can be considered in another
aspect where the law is not in doubt.

The facts presented.by the record in this case show that the
words "Zelotes Terry, Trustee," signed to the guaranty, may
mean something more than the mere name of the agent.   In
ordinary cases such would undoubtedly be the import of the
words used.

But what is the true legal or corporate name of the defend-

ants ?　Not "East family of Shakers," as we would commonly call them ; nor "Brethren and Sisters of the United Society of Believers," as called in the "Covenant ;" but as we have already stated, it is the name of the person who is the trustee for the time being, with the addition, to make it complete, of the words "Trustee for the East family of Shakers," or equivalent words.　The statute, it is true, only gives the name as one by which the defendants must sue and be sued ; but it is the proper name by which to contract also ; it is the only corporate name.

The words "Zelotes Terry, Trustee," being then an essen tial part and the main part of the corporate name of the defendants, it cannot be said that the addition of the word "trustee" is necessarily merely *descriptio personæ;* and the in strument in question being non-negotiable, there is no difficulty in admitting evidence dehors the instrument, by parol, to show that it was the Shaker trustee that was meant, and that the guaranty was in behalf of the community, and that the name used signified the community ; so that, in language similar to that used by Hubbard, J., in *Paige* v. *Stone*, 10 Met., 160, it might be left to the jury to determine upon the evidence what was meant and understood by the words "Zelotes Terry, Trustee ;" and if the jury should find that they meant the defendants who were represented by a lawful trustee, acting in their behalf within the limits of his authority, it would undoubtedly be sufficient to make the defendants liable on the guaranty in the second count.

We advise a new trial in behalf of both parties.

In this opinion the other judges concurred.